# CHARLESTON.

DEAN *et al. v.* CANNON *et al.*

Submitted June 9, 1892.—Decided November 26, 1892.

1. NON-RESIDENT—COSTS—NOTICE—DISMISSION.

Section 2, c. 138, of the Code (Ed. 1891) reads as fellows: "In any suit (except where such poor person is plaintiff) there may be a suggestion on the record of the court, or, if the case be at rules, on the rule docket, by a defendant or any officer of the court, that the plaintiff is not a resident of this state and that security is required of him. After sixty days from such suggestion, the suit shall, by order of court, be dismissed, unless before the dismission the plaintiff be proved to be a resident of the state, or security be given before said court, or the clerk thereof, for the payment of the costs which may be awarded to the defendant, and of the fees due or to become due in such suit to the officers of the court." Such suggestion and requirement having been entered on the record, the present law requires no other notice, nor the entry and service of any rule.

2. NON-RESIDENT—COSTS—DISMISSION.

At any time before the dismission, the plaintiff may be proved to be a resident of the State, or the security may be given before the court, notwithstanding the period of sixty days has elapsed.

3. COSTS—WAIVER—PRESUMPTION.

Such requirement of security may be waived, and such waiver may be presumed from the conduct of the defendant. See *Enos* v. *Stansbury*, 18 W. Va. 477; *Rutter* v. *Sullivan*, 25 W. Va. 427.

4. RESIDENCE.

A case in which the doctrine of residence, within the meaning of this statute, is discussed and applied.

*R. S. Blair & Son* for appellants cited 1 Va. Cas. 123; 18 W. V. 482; 25 W. Va. 429; 30 Gratt. 733.

*P. W. Morris* for appellees cited 31 W. Va. 790–797.

HOLT, JUDGE:

In January, 1891, in the Circuit Court of Ritchie county, Callie Dean, Adda Cannon, and others brought this suit in equity against John Cannon and others for an account of rents and profits of a certain tract of land, for a sale thereof, and distribution of proceeds, in lieu of partition in kind.

The five infant defendants answered by their guardian *ad litem;* and on the 16th day of February, 1891, all the defendants appeared by their attorney, and suggested that the plaintiffs were non-residents of the State of West Virginia, and demanded security for costs. On the question of non-residence the affidavit of the plaintiff Adda Cannon was taken and read, tending to show that she was a resident. The counter affidavits of six persons were taken and read, tending to show that plaintiff Adda Cannon was not a resident of this State, but was a resident of Washington county, State of Pennsylvania, whereupon the court entered the following final decree:

"CALLIE DEAN AND OTHERS
         *v.*             } In Chancery.
"WM. F. CANNON AND OTHERS. }

"This cause came on this day to be heard upon the suggestion on the record of this Court, at a former term hereof, by the defendants, of the non-residence of all the plaintiffs, and upon the proof filed on behalf of the plaintiff Adda Cannon, as to her residence in the State as well as the affidavits filed as proof by the defendants, as to her non-residence. Upon consideration whereof the court is of opinion that the preponderance of proof is that the said Adda Cannon is a non-resident of the State, and that she is not a resident of the said State. And it not being proved in any way that any of the plaintiffs in this cause are residents of the State of West Virginia, and the plaintiffs not having given the security for costs, as required by law, either before this Court or the clerk thereof, within sixty days from the time of the said suggestion upon the records of this Court, nor upon any day of this term, and the last day of this term of this Court having arrived, it is adjudged, ordered, and decreed that this suit be dismissed. It is fur-

ther adjudged, ordered, and decreed that the defendants recover of the plaintiffs their costs about their suit in this behalf expended."

From the above final decree of the Circuit Court of Ritchie county, the plaintiffs appealed to this Court.

By the Code of Virginia of 1819 security for costs was required to be given within sixty days after notice shall at any time during such non-residence have been given to the demandant of plaintiff or his attorney by some person interested, that such security is required *etc.* 1 Code 1819, p. 495. By the Code of Virginia of 1849 (Ed. 1860) and the Code of West Virginia (1891) c. 138, s. 2, the notice is required to be given by a suggestion on the record in court, or, if the case be at rules, on the rule docket, "that the plaintiff is not a resident of this State, and that security is required of him."

The present law requires no other notice, nor the entry or service of any rule; for section 2, c. 138, provides further : "After sixty days from such suggestion the suit shall, by order of the court, be dismissed, unless before the dismission the plaintiff be proved to be a resident of the State, or security be given," *etc.* But the practice has always been to permit the security to be given before the order of dismissal is entered, although the sixty days have elapsed. *Goodtitle* v. *See*, 1 Va. Cas. 123 (1799); *Vance* v. *Bird*, 4 Munf. 365 (1815); *Enos* v. *Stansbury*, 18 W. Va. 477. Therefore the proceeding in this case was sufficient and regular, there being no need of the entry or service of any other order or rule.

But plaintiffs say defendants have waived their right to demand security for costs, and cite *Enos* v. *Stansbury*, 18 W. Va. 482; *Riutler Sullivan*, 25 W. Va. 429. The law was enacted for the officers of the court as well as for the defendants, and each is given expressly the right to make the suggestion of non-residence and the requisition of the security; but it was for their benefit, and they can forego the suggestion, as the officers of the court have done in this case, or they can waive it after made, as plaintiffs claim defendants have done. But as I look at it, and in the light of our Circuit Court practice, this contention of plaintiffs is not tenable.

Let us see what the defendants have done, and when they did it, that amounts to a waiver of the rule for security for costs: The first order shows that on February 14, 1891, the five infant defendants, Lewis Allen Cannon, Flora Cannon, Jessie Cannon, William Cannon, and Lilla Cannon, by their guardian *ad litem*, Will A. Strickler, filed their answer. During the same term, viz., on February 16, 1891, "the defendants, by their attorney, suggested that the plaintiffs were non-residents of West Virginia, and demanded security for costs." On the 4th of April, 1891, the next term, William F. Cannon, one of the adult defendants, appeared and demurred to plaintiffs' bill, which demurrer the court on that day overruled. At the next term, on 25th June, 1891, the cause was heard on the rule for costs and dismissed.

The sixty days from February 16, 1891, during which the rule for costs was to run, had not expired on the 4th of February, 1891, when defendant William F. Cannon demurred. The policy of the law is to expedite the hearing of causes, and the preparation of them for such hearing. Why not have the demurrer disposed of, and the pleadings made up, against the 16th April, 1891, or 25th June, 1891, when plaintiffs would discharge the rule by proving themselves to be citizens of the State or comply with it by giving security for costs? Why, on April 4, 1891, were defendants bound to conduct themselves on the presumption that plaintiffs would thereafter fall short in both particulars? What would have been the effect if William F. Cannon had demurred to the bill after the lapse of the sixty days, need not be considered, but it would hardly be presumed to be a waiver of the rule on the part of his infant codefendants.

Plaintiffs say that on the merits the decree is wrong, because plaintiff Adda Cannon is shown to be a resident of this State, within the meaning of the word "resident," and not a resident as used in the statute, and that the security for costs was required on a false suggestion.

The reason of the law is that if the person and the property which follows the person is not within the power and amenable to the process of the court, then security must be

given, if required of him. To have some one in reach liable and bound for costs, is the manifest purpose of the statute, and it would seem to be controlled by the same reason and purpose as the same term in the cases of foreign attachment.

In *Long* v. *Ryan*, 30 Gratt. 718, the subject is discussed by Judge STAPLES with clearness and ability. "Our statutes, and American statutes generally, do not use the term 'domicile,' but the terms resident and non-resident, to express the connection between person and place; its exact signification being left to construction, to be determined from the context and the apparent object sought to be attained by the enactment."

Jacobs on Domicile (chapter 3, § 75) citing here and on other points *Long* v. *Ryan*, above, has gathered together a great deal of authority and information on the subject, and collates and discusses the cases with ability. He discusses the question, "Is domicile place or legal relation?" Accepting the latter, the author gives us his definition: " 'Home' and 'domicile' do not correspond, yet 'home' is the fundamental idea of 'domicile.' The law takes the conception of 'home,' and, molding it by means of certain fictions and technical rules to suit its own requirements, calls it 'domicile.' Or perhaps this may be best expressed by slightly altering Westlake's statement, 'Domicile is, then, the legal conception of residence,' *etc.*, and saying 'domicile is the legal conception of home.' So combine, then, what has been said in this and the last preceding sections. 'Domicile' expresses the legal relation existing between a person and the place where he has, in contemplation of law, his permanent home." Jac. Dom. c. 3, § 72.

. There is no doubt that it is often used to designate a place, the characteristic of which is that it is so related to a person as to be in law his permanent home, abode; one's own dwelling place; that place or country in which he either (1) in fact resides with the intention of residence, *animus manendi*, or (2) in which, having so resided, he continues actually to reside, though no longer retaining the intention of remaining, *animus manendi*, or with regard to which having so resided there he retains the intention of resi-

dence *animus manendi*, though he in fact no longer resides there.

More briefly, a person's home is that place or country in which either he resides with the intention of residence, or in which he has so resided, and with regard to which he retains either residence or intention of residence. Dicey, Dom. p. 42 *et seq.* "Domicile."

Residence at a particular place, accompanied with an intention to remain there for a time not limited. Whart. Confl. Laws, c. 2; 5 Am. & Eng. Ency. Law, tit. "Domicil," p. 854, and authorities cited.

The difficulty of definition is that the terms used require definition. Hence the subject is generally discussed by way of description, illustration, presumption of law and of fact, and the mode and means of proof.

In *Long* v. *Ryan*, 30 Gratt. 718, it is held: "There is a wide distinction between domicile and a residence. To constitute a domicile two things must occur: *First*, residence; *second*, the intention to remain there for an unlimited time (time not limited.) Residence is to have a permanent abode for the time being, as contradistinguished from a mere temporary locality of existence."

The word "residence" in the statute in relation to attachment is to be construed as meaning the act of abiding or dwelling in a place for some continuance of time.

"While, on the one hand, the casual or temporary sojourn of a person in the State, whether on business or pleasure, does not make him a resident of the State, within the meaning of the attachment law, especially if his personal domicile is elsewhere, so, on the other hand, it is not essential that he should come into the State with the intention to remain here permanently, to constitute him a resident." Reno, Nonres. § 42.

This recent writer deals with the term "non-resident" in the sense of "a citizen of the United States who does not reside in the State in which the question arises for decision, or in which the act complained of or relied upon was performed."

Therefore, for our present purpose, we may take the term "non-resident," as used in this statute, as meaning one who

resides out of the State, a non-resident within the meaning of the statute of foreign attachment and of the statute permitting service of process by order of publication, *etc.*

There is no attempt to show that any of the plaintiffs are residents, except the plaintiff Adda Cannon. She files her own affidavit, taken in Washington county, Pa., dated April 27, 1891, where she had been since the summer of 1890, saying that "she is a resident of the State of West Virginia and the county of Richie; that she is only temporarily absent in the State of Pennsylvania;" and that the suggestion on the record, that she is a non-resident of the state of West Virginia, is wholly untrue. This, when met and denied by counter affidavits, is hardly full enough to be entirely satisfactory. No statement is given of the occassion of her absence, no explanation of its duration for eight months, nor time or occasion given when she expects to return. She has actually ceased to dwell within this State for eight months, without any definite intention as to a time or occassion for returning. Nor does she say directly that she has any intention to return—only that she is temporarily absent. Non-residence, within the meaning of the attachment law, began as soon as she left the State, with no then present intention of returning. *Moore* v. *Holt* 10 Gratt. 284 ; *Clark* v. *Ward*, 12 Gratt. 440.

On the other side, we have the affidavits of six persons, including her father and two sisters, who say, in substance, that up to the time of Adda Cannon's departure, in August 1890, she made her home at her father's, near Harrisville, in Ritchie county; that about the latter part of August, 1890, she went to Pennsylvania to reside, as they understood her; that she still resides in that State; that she said she did not intend to come back, unless it was on a visit.

I think the conclusion reached by the Circuit Court was right, that under this evidence the plaintiff did not show herself to be a resident within the meaning of the statute on the subject, which has been held to be constitutional. *Nease* v *Capepart*, 15 W. Va. 299, cited in Reno, Nonres. p. 45, § 42, plaintiffs failing to give security for costs, as required, the suit was properly dismissed; and out of abund-

ant caution we make it a dismissal without prejudice, and thus modified affirm it.

DECREE MODIFIED AND AFFIRMED.