OF THE

## STATE OF IOWA

AT

## DES MOINES, SEPTEMBER TERM A. D. 1906.

AND IN THE SIXTIETH YEAR OF THE STATE.

---

W. J. FUNK AND WM. GRABER v. CHURCH & FITZGERALD, R. M. CHURCH AND E. C. FITZGERALD, Appellants.

**Security for costs:** FAILURE TO FILE BOND: DISMISSAL. The statute providing that an action shall be dismissed for failure to file a cost bond in such time as the court allows is remedial and should be construed as directory; and where the court over-rules a motion to dismiss because the bond is filed too late the ruling will be treated as an exercise of the court's power to extend the time.

**Principal and agent:** UNAUTHORIZED CONTRACT OF AGENT. The un-authorized contract of the agent of a vendor of land with the vendee, in the making of which the agent did not pretend to represent his principal, is not binding upon the vendor.

**Reformation of instruments:** EVIDENCE. In an action on a contract of indemnity made by the agent of the vendor of land the evidence is reviewed and held insufficient to authorize a reforma-

1

tion of the contract so as to hold the principal liable to the vendee for failure of his title.

*Appeal from Lyon District Court.*— HON. WM. HUTCHIN-SON, Judge.

TUESDAY, OCTOBER 23, 1906.

ACTION on contract.   Judgment as prayed.   Defendants appeal.— *Reversed.*

*E. C. Roach,* for appellants.

*Parsons & Riniker,* for appellees.

LADD, J.— Before answering, defendants moved for a cost bond, owing to the nonresidence of plaintiffs.   The motion was confessed and an order entered requiring such

1. SECURITY FOR COSTS: failure to file bond: dismissal.

bond to be filed within thirty days.   The bond was filed one day late, and owing to this the defendants moved that the action be dismissed.   The motion was overruled.   Appellants rely on section 3848 of the Code, which directs that " an action in which a bond for costs is required by the last section shall be dismissed if a bond is not given in such time as the court allows."   This statute, though peremptory in form, is remedial in character and should be construed as directory. The statute means no more than that upon a refusal to comply with the order of court the action will be dismissed. But the court may extend the time, and in treating the bond as filed in time the ruling on the motion to dismiss was tantamount to such extension.   *Rosenfeld v. Swartz,* 22 R. I. 307 (47 Atl. 691); *Spalding v. Bainbridge,* 12 R. I. 244; *Dean v. Gannon,* 37 W. Va. 123 (16 S. E. 444); *Town v. Evans,* 11 Ark. 9; *Ex parte Jones,* 83 Ala. 587 (3 South. 811); 11 Cyc. 185.   *Newbury v. Mfg. Co.,* 106 Iowa 140 is not in conflict with this conclusion.

As a result of negotiations between W. J. Funk and Church & Fitzgerald, as agents of H. J. Scrapps, a contract of sale in words following was executed December 12, 1901:

2. PRINCIPAL AND AGENT: unauthorized contract of agent. "Received of W. J. Funk of the county of Rock, State of Minnesota, whose postoffice address is Steen, the sum of $20.00 on account of purchase made by him this day from the undersigned agent or broker of the following described real estate situated in the county of Stevens, state of Minnesota, to-wit: The west half of the northwest quarter and the north half of the southwest quarter and the east half of the northwest quarter, section seven, township 123, range 43, Stevens county, containing 160 acres of deeded land and 80 acres, the title of which is to come from the Great Northern Ry. Co., or the legal holders thereof." The remaining conditions relate to payments and the transfer of title. Neither the agents nor Scrapps controlled the title to the eighty acres, and before the execution of a deed to the one hundred and sixty acres the following agreement was entered into: "February 3rd, 1902.— We agree to reimburse W. J. Funk for $500.00 if he loses the east ½ of the southwest ¼ of section 7-123-43. Said W. J. Funk allowing one hundred dollars for each year occupied by him. [Signed] Church & Fitzgerald, W. J. Funk." Thereafter an undivided one-half interest in the contracts was assigned to Wm. Graber. Later Funk sold his interest in the one hundred and sixty acres to Graber and allowed the latter to occupy the eighty acres. Undisturbed possession thereof was enjoyed for about two years, when Funk was notified by an agent of the St. Paul, Minneapolis & Manitoba Railroad Company that that company owned the land, and he must get off or purchase it.. Graber bought the land and in this action recovery on the last agreement is demanded; that is, of the $500 less $200, to be deducted for occupancy during the two years. The defendants contended that Scrapps, and not themselves, was liable on the indemnity contract. This is not so; for

they were not authorized by him to execute it, nor do they pretend to have acted for him therein.

It is next said that the court erred in not reforming the indemnity agreement so as to provide against indemnity in event the railroad company should acquire title. It appears from the evidence adduced that Scrapps did not claim to have title to the eighty acres; or know to whom it belonged. He had occupied it for some time and the defendants represented that Funk might be able to continue in such occupancy. Of the consideration, $500 was included, in part,.at least, because of the transfer of this possession, and, as no one pretended to know when it might be terminated, the promise of indemnity in event it were lost was executed. The defendants testified that its purpose was to protect Funk against squatters or others who might assert homestead rights in the land, and that it was understood that, as Funk would have the first opportunity to purchase if the railroad acquired title, in that event he was not to be indemnified. In this they were fully corroborated by two disinterested witnesses. On the other hand, Funk testified that such was not the understanding, that the indemnity was for loss to the company or any one else. In view of the record as thus stated, there is much force in the argument that the court should have accepted the testimony of the four witnesses, instead of that of the one, and reformed the instrument. A decision of this issue, however, is unnecessary, as we find that the evidence wholly failed to establish any loss.

3. REFORMATION OF INSTRUMENTS: evidence.

By Funk's consent Graber was in possession, and that possession does not appear to have been disturbed by the interference of any one. True, the agent of the railway company told Funk the land belonged to it, and the company executed the deed, purporting to convey the land to Graber. But neither of these circumstances was evidence that the company in fact owned the land, nor was the advice of some attorney in Minnesota that it belonged to the com-

pany, so that there was no evidence that either Funk or Graber had ever been disturbed in their possession by any one, or that any person or corporation having a superior title to or right of possession of the land had claimed the same. Until the use of the eighty acres was interfered with in some way or the possession or title claimed by some one in a position to assert a right thereto, loss of the land was not established. On this ground the petition should have been dismissed.

*Reversed.*