# CHARLESTON.

GARTIN, ADM'R, *v.* DRAPER COAL & COKE CO.

Submitted February 27, 1912.    Decided January 28, 1913.

1. PLEADING—*Declaration—Duplicity.*

   The allegation, in a single count of a declaration, of numerous acts of negligence, all actionable and involved in the same transaction, does not render the declaration bad on demurrer. (p. 407).

2. SAME.

   At common law such a count would be bad for duplicity, advantage of which could have been taken by special demurrer. Special demurrers having been prohibited by statute, the exception must be taken by a demand for specification of the particular ground of action.   (p. 407).

3. SAME—*Demurrer—Grounds.*

   Defective statement of an element in a cause of action is not available as ground of insufficiency on a demurrer to the declaration, and, in the absence of a demand for a more particular statement, the defect is deemed to have been waived. (p. 407).

4.  MASTER AND SERVANT—*Injuries to Servant—Fellow Servants.*

To obtain the exoneration from liability, conferred by the statute requiring operators of coal mines to employ mine foremen, such operators must comply strictly with the conditions prescribed in the act.    (p. 409).

5.  SAME.

Employment of a person as mine foreman who has his domicile outside of the state is a violation of the statute and makes such employee the mere common law agent of the employer and his vice-principal in respect to non-assignable duties delegated to him.    (p. 410).

6.  SAME.

The statute requires the mine foreman to have both his domicile and his actual residence in the state.    (p. 410).

7.  SAME—*Injuries to Servant—Actions—Questions for Jury.*

If a person employed as mine foreman actually resides in the state and the evidence is inconclusive as to his domicile, his eligibility to employment as foreman is a question for jury determination.    (p. 410).

8.  SAME—*Injuries to Servant—Actions—Admissibility of Evidence.*

On such an issue, the court may properly exclude a statement of the mine foreman as a witness, that he considered himself a citizen of the state at the time of his employment, and also a statement that he had voted in the county, unaccompanied by any indication of the time at which he had voted.    (p. 412).

9.  SAME—*Injuries to Servant—Fellow Servants—Mine Foreman—Superintendent.*

The positions of statutory mine foreman and superintendent of the same mine are incompatible, in the sense that the owner of the mine cannot claim the protection of the statute against liability for negligence of the foreman in respect to common law non-assignable duties imposed upon the foreman by the statute, if he employs the same person for both positions.    (p. 413).

10.  SAME—*Injuries to Servant—Fellow Servants—Mine Foreman.*

If a mine foreman, thereunto authorized by the operator of the mines, employ a minor and place him in a dangerous place to work, without apprising him of the danger and instructing him as to means of avoidance thereof, and such employee is injured or killed as a result of such action, the operator is liable, notwithstanding the statute makes it the duty of mine foremen to instruct the men working under them.    (p. 415).

11.    SAME—*Injuries to Servant—Actions—Evidence.*

   In an action against a coal mining company for the wrongful
   death of a miner seventeen years old, in which both the eligi-
   bility of the person employed as mine foreman and authority
   in him to employ servants and assign them to duties are ques-
   tions for jury determination, evidence of the assignment of the
   decedent to work in a room having a dangerous roof with a
   machine peculiarly liable to jar down slate and rock, without
   full explanation of the danger and instructions as to precau-
   tions for its avoidance, is admissible.  (p. 417).

Error to Circuit Court, Logan County.

Action by William Gartin, administrator, against the Draper
Coal & Coke Company.  From an order setting aside a verdict
for plaintiff, he brings error.

*Reversed and Rendered.*

E. T. *England* and *Marcum & Marcum,* for plaintiff in error.

*Lilly & Shrewsbury,* and *Campbell, Brown & Davis,* for de-
fendant in error.

POFFENBARGER, PRESIDENT:

Plaintiff's decedent, a boy 17 years old, and a servant of the
defendant company, was killed in its mine by a fall of slate.  A
verdict for $6,000.00 against the company was set aside by the
court under the impression that it had erred in the trial of the
case.  Upon this writ of error, reversal of that order and judg-
ment on the verdict are sought.

In support of the action of the trial court, there is a cross-as-
signment of error based on the overruling of the demurrer to the
declaration.  Though the declaration was not skilfully drawn
and might have been made more direct and certain in some of its
material allegations, it sets forth numerous acts of negligence and
then says "by means whereof a large and ponderous piece of slate
and a large quantity of stone and earth" fell upon the decedent.
It charges general failure to comply with the statute requiring
the employment of a citizen of the state, with three
years of practical experience, as a mine foreman, fail-
ure to provide safe machinery and appliances, to oper-
ate the mine with ordinary care, to provide sufficient
props and stays for the roof and to give the decedent information

as to the danger of the work and instructions to enable him to avoid danger and injury. It also charges palpable defects in the mine roof and the use of a machine unsafe and unsuited to the work the servant was doing at the time of the accident. It also charges the employment of an inexperienced, incompetent and impractical person as mine foreman "instead of employing such a person as is required" by the mining laws of the state. Employment of a non-resident of this state or a citizen of another state as mine foreman is not directly charged, but the express allegations indicate intent to rely upon failure to comply with the statute in this respect. In this unskilful manner, grounds of action are stated in the declaration and the injury attributed to them by the averment of injury by means thereof. At common law this would have made the declaration bad for duplicity or double pleading, but it was a formal defect, remediable by special demurrer. In this state, the special demurrer has been abolished and the remedy for such defect is a demand for specification of grounds of the action or defense. *Lydick* v. *Railroad Co.*, 17 W. Va. 427, 446; *Jacobs* v. *Williams,* 67 W. Va. 378; Code, ch. 125, sec. 29. The expression of intent to rely upon violation of the statute by the employment of a non-resident as mine foreman, by the terms already referred to brings that wrongful act into the declaration as an element. These indefinite terms constitute, under our decisions, an allegation, uncertain and insufficient at common law, but sufficient under our statute in the absence of a demand for specification. *Jacobs* v. *Williams,* cited; *Transportation Co.* v. *Oil Co.,* 50 W. Va. 611; *Clark* v. *Railroad Co.,* 39 W. Va. 732; *Wheeling* v. *Black,* 25 W. Va. 266.

Admission of evidence excepted to on the ground of inadmissibility, exclusion of evidence offered and refusal to give an instruction asked for are relied upon as errors in the trial justifying the setting aside of the verdict. It is necessary to the proper disposition of these claims and contentions, to state the general grounds of liability asserted by the plaintiff and the general character of the evidence.

The plaintiff proceeded in the trial upon two theories or claims of liability, violation of the statute in the employment of a citizen of another state as mine foreman, and delegation to the mine foreman of non-assignable duties of the employer outside of and

beyond his statutory duties, the employment of men and assignment of their duties in the mines.

It is said the employment of a person not belonging to the class of persons designated by the statute as eligible for employment as mine foreman, citizens of the state having had five years experience as miners, does not give the employer the protection of the statute in respect to the duties prescribed for mine foremen, nor make the mine foreman a fellow servant of the other employees in respect to acts which at common law would be breaches of non-assignable duties of the master. In other words, it is claimed the principles announced in *Williams* v. *Coal Co.*, 44 W. Va. 599, *McMillan* v. *Coal Co.*, 61 W. Va. 531, and *Squilache* v. *Coal Co.*, 64 W. Va. 337, do not apply, if the person employed as mine foreman was not a citizen of the state.

Compliance with the statute in question absolves the employer from very great responsibility and casts it upon the mine foreman. The reason for requiring the latter to be a citizen of the state is not disclosed by the terms of the statute. As he is substituted, to some extent, for the employer, and made liable both civilly and criminally, we may well suppose intent to subserve the interests of the state and also those of his fellow servants by requiring him to have his domicile in the state and thus be within the reach of the process of its courts. Persons injured by his negligence or dereliction of duty and having the right to look to him for damages might find it inconvenient and detrimental to their interests to be compelled to go to a distant state to sue him. It is against state policy to send a citizen to the courts of another state for redress of an injury or vindication of a right. Likely the legislature intended compliance with this requirement as a protection to the interests of the numerous persons brought into relation with the mine foreman by virtue of the statute and compelled to look to him as the source of redress of wrongs. Failure to comply with the statute in this respect, therefore, would no doubt in many cases work serious injury which the legislature did not intend to permit. Obviously there is no reason why a citizen of another state may not be just as competent, as regards skill and ability, to perform the duties of mine foreman, as a citizen of this state. This requirement was evidently not intended as a means of securing familiarity, on the part of the mine foreman, with mining conditions in this

state, for it requires citzenship only at the time of employment and a certain amount of experience in mining without reference to the location of its acquisition. Nevertheless there are substantial reasons for requiring citizenship in the state on the part of the mine foreman, and as the statute substitutes the foreman for the owner or employer, on the latter's compliance with certain conditions, but not otherwise, non-compliance therewith leaves him in the situation in which he would be without such a substitute. Although a non-resident foreman might do just as well as a resident foreman, the statute confers no authority to substitute him for the owner. *Expressio unius est exclusio alterius:*

There is a divergence of views among counsel as to who is a citizen, within the meaning of the statute. The word "citizen" is sometimes used in the restricted sense of "inhabitant." In such cases, the context is supposed to disclose legislative intent to include actual residence as a part of the definition or purpose in the particular instance. Citizenship is broader in meaning than inhabitancy. A man may be a citizen and not an actual resident. No doubt in some connections the word "citizen" may be regarded as having been used in the sense of "inhabitant" only. It depends upon the legislative purposes as well as the terms. Nothing in the context here indicates purpose to narrow the meaning of the word "citizen" to that of "inhabitant." No doubt the mine foreman must be a resident citizen, an inhabitant, as well as a citizen, but there is no indication of intent that simple inhabitancy of the state shall render a person eligible to employment as mine foreman. Our conclusion is that only citizens, persons actually residing in the state and entitled to participation in the government thereof and management of its affairs, are eligible to employment as mine foremen.

Conclusiveness of the proof of citizenship is insisted upon for the defendant in error as justification for the setting aside of the verdict. Kitchen, the mine foreman, spent a number of years as a miner in various places in Kentucky. Just when he first came into the state of West Virginia is not disclosed. He says he worked at Belmont, W. Va., and Handley, W. Va., but does not give the years of such work. Then he went to Ironton, Ohio, where he was engaged in the coal business for about six years. From Ironton he went to Williamson, W. Va., and worked as

mine foreman for a period of four months.  Then he was at
Twin Branch, W. Va., as mine foreman, one month, and from
that point he went to Fort Branch, W. Va., where he worked
in the same capacity for one year and 20 days, after which he
went to work for the defendant company on the 20th day of
January, 1908.  He brought his family to Logan county the
latter part of February, 1907, nearly a year before he was em-
ployed by the defendant company.  He went to Fort Branch Jan-
uary 1, 1907, and his family came there about a month and a
half later from Ironton, Ohio.  They were also with him during
the last three months of his employment at Williamson.  He
owns a dwelling house and seven or eight acres of land at Iron-
ton and, when out of employment, goes there to reside.  Some-
time after the death of the miner whose administrator is plain-
tiff here, his employment ceased and he moved his family back
to Ohio.  While employed here, he lived in dwelling houses
owned by his employers and purchased no residence in the state.
During a portion of his employment here as mine foreman, his
family were at their home in Ohio.

Domicile is so largely a matter of intention that it is often a
question of fact.  The legal definition thereof is not difficult of
application when the facts do not give rise to conflicting infer-
ences as to the intention.  All authorities agree as to the essen-
tiality of two elements, actual residence and intent to remain in-
definitely, *animo manendi.*  Determination of the latter requisite
is the difficult point here.  For the defendant in error, *White* v.
*Tennant,* 31 W. Va. 791, and *Dean* v. *Cannon,* 37 W. Va. 123,
are relied upon as asserting sufficiency of the evidence to prove
the requisite intent as to permanency.  As stated in the opin-
ions of those cases, an intent to remain forever is not necessary.
There may be mental reservation or an indistinct purpose to
leave at some time in the future.  But upon the acquisition of
a residence in another state, the domicile is not changed unless
the intention to return to the old home, *animo revertendi,* ceases.
The length of residence and its purpose are immaterial, so long
as there remains an intention to return.  Intent to move a sec-
ond time to a third state or country is not incompatible with
domicile in the place of actual residence, for the authorities say
every man must necessarily have a domicile somewhere.  He
loses his domicile by removal with intent not to return.  Then

his domicile is at the place at which he stops for actual residence and remains there until he moves again without intent to return. But if he moves from a domicile with intent to return to it he does not lose it, for which reason he does not gain a new one. In *White* v. *Tennant* Judge SNYDER said "a change of domicile does not depend so much upon the intention to remain in the new place for a definite or indefinite period as upon it being without an intention to return." The evidence is clearly not conclusive as to the intent with which Kitchen took up his residence in this state. Hence, it was a question for the jury.

On the examination of Kitchen, the court struck out the following answer to a question as to his citizenship in January, 1908: "Well, I considered I was a citizen of the State of West Virginia." On motion, his statement that he had voted at a school election in Logan County was stricken out. An exception was taken to proof of an admission by him that he lived in Ohio. The answer of the witness as to his citizenship was nothing more than an expression of opinion. He said nothing as to his intention at the time. Without any intention whatever to remain in the state, and fully intending to return to his former place of residence, he might have expressed the opinion that he was a citizen, or so regarded himself. There was no error in excluding the answer. The admission as to his home was admissible. It bore directly upon the question of intention. The time at which he voted at a school election not having been stated, the court did not err in striking out the testimony as to it. Voting and attempts to vote are competent evidence on the question of domicile. Jacobs on Domicile, sec. 435. If the defendant had intended to rely seriously upon this act of Kitchen as evidence of citizenship, it should have shown the voting to have been done prior to the injury to the decedent. It may have occurred afterwards and after his employment ceased. We do not think enough is shown to render the circumstances admissible.

Obviously, the state of the evidence and the rulings of the court properly left it to the jury to say whether, by reason of the violation of the statute, the man acting as mine foreman was a mere common law agent of the employer and, as to non-assignable duties, its vice-principal. On that finding the entire statutory system, in so for as it absolves the employer from liability, falls and becomes inapplicable. Provision of a safe place to work,

maintenance thereof, employment of competent servants, instruction to minor employees and all other common law duties and liabilities remain in full force.    The negligence of the ineligible forman as to such matters is his master's negligence, and common law principles govern in the formulation and trial of the issues.

The second theory of liability conflicts with the terms of the statute, making it the duty of the mine foreman to instruct miners working under him.    Though employed and assigned to their work by him, under authority as agent, conferred by the employer, the statute places the duty of instruction upon him, not the employer.  Code Supp. (1909) sec. 405.   By another provision, found in section 410, Code Supp. (1909), the miner is required to prop his room for his own protection.    These are new provisions inserted by chapter 78 of the Acts of 1907.    These statutory duties of the mine foreman, however, conflict with the duties of his agency for the employer, respecting other non-assignable duties, when such agency has been conferred.    Superintendency of a mine is representation of the owner, who stands in a certain relation to the mine foreman created by the statute. Upon him the foreman is required to make requisitions for materials, machinery and supplies for maintenance of the safety of the mine.    If these two positions are held by the same person, it is necessary for him, acting in one capacity, to make demands upon himself in the other to comply with the letter of the statute. Compliance with its letter in this manner would violate its spirit. The agent's interest in one direction would oppose his interest in the    other.    His    superintendency    would    be    in    the    nature of an inducement to neglect and avoidance of his duties as mine foreman.    In other words, the two positions are incompatible with the spirit of the statute and the relation it establishes.    As superintendent, he could ignore his own negligence or incompetence as foreman to the detriment of both miners and owner.    It was not the purpose of the statute wholly to relieve mine operators of responsibility.    It must have a reasonable interpretation and construction.    We borrowed it from Pennsylvania and its spirit as understood and applied there is its spirit here, though the terms and provisions of the statute in the two states differ somewhat in detail provisions.    In *Wolcutt* v. *Coal & Coke Co.,* 226 Pa. St. 204, the court held:  "While a mine foreman is a fellow servant of the miners employed in the mine,

yet if the company which employs him makes him also the superintendent of the mine, and through his negligence the roof of an entry falls and injures a miner, the company will be liable in damages for his negligence to the person injured." While the opinion in that case refers to some special provisions of the statute not found in ours, the basis of it is the incompatibility of the two positions. The court says: "The duties imposed by the act on the mine foreman do not relieve the superintendent from the duties which he owes to the employees of the mine. When the owner employs a certified mine foreman and puts him in charge of the internal workings of the mine, he has done all that the law requires him to do and he is not required through his superintendent to inspect and look after the interior of the mine. The law presumes that the certified foreman is fully competent, more so even than the superintendent or the owner, to keep the mine in proper and safe condition, and hence it does not impose the further and additional duty on the owner of requiring the superintendent to look after the interior of the mine, and hold him responsible for the negligence of the superintendent in failing to perform such duty. * * * * Suppose the positions of mine foreman and superintendent had been filled by different parties, and the knowledge that the former had not performed his duty and removed it, would it not have been the duty of the superintendent to have taken the necessary steps to have remedied the defect? In other words, when the superintendent knows that the mine foreman has, for any reason, become unfit to perform his duties, or is negligent in the performance of them and permits the mine to become dangerous and unsafe, is it not the superintendent's duty to take the necessary steps to remove the danger and place the mine in a safe condition?" Our statute prescribes no duties for the superintendent by name, as the Pennsylvania statute does, but he is the mere representative of the owner upon whom our statute does impose duties. He or his agent is bound to maintain in his mine a competent and qualified mine foreman for the protection of the miners. This provision must have effect according to its spirit and purpose. If, having employed a competent man for foreman, the owner knows he is habitually and persistently negligent and subjecting his fellow servants to danger, and fails to remove him or in some way effect a remedy, he is not complying with the purpose of the

statute.   Hence, notice to him of the interior conditions of the mine and transactions therein will, under certain conditions, impose liability.   The statute was not designed to shield him from non-compliance with its substantial requirements.   If the same person is mine foreman and superintendent and duties as mine forman are omitted, the employer is given notice in law through the agency of the same person as the superintendent, and responsibility immediately attaches.

The ground of incompatibility of these two positions may be found in legal principles, outside of the statute.   There may be a joint agency by contract, express or implied, but, in the absence of such an agreement, one person cannot take advantage of an agency created for the benefit of another and appropriate it or the fruits thereof to his own benefit.   *Rohrbough* v. *Express Co.*, 50 W. Va. 148; *Bank* v. *Furniture Co.*, 57 W. Va. 625. Surely the employer of a mine foreman, a *quasi* public agent whose duties are imposed and defined by law and involve conflict with the employer himself, cannot, by agreement with him, limit such duties or change their character.   Nor can it be supposed the legislature intended to authorize the existence of any relation between them that might constitute an inducement or cause for neglect of the performance of such duties.   It is perfectly apparent that the position of superintendent, conferred upon a foreman, would, in many instances, have that effect.   As mine foreman, the employer is supposed to have the safety of the men in mind at all times and, if necessary, to the exclusion of everything else.   The superintendent has for his dominating purpose the production and marketing of coal for the profit of the owner.   The two positions in the hands of the same man are thus naturally in conflict.

The mine foreman here is not shown to have been, in all respects, the superintendent of the mine in his charge, but it is claimed he was authorized by the owner to employ servants to work in the mine and assign them to their duties.   In so far as these acts involve the safety of the employees, either the individual assigned to a particular duty with reference to his own safety or others who might be injured by his incompetency, they are non-assignable duties of the owner which the statute does not impose upon the mine foreman.   If, therefore, the operator delegates them to the mine foreman, he thereby makes him a su-

perintendent *pro tanto,* and, if the latter, in the exercise thereof, comes in conflict with his own duties as mine foreman, the result is logically the same, as regards that act, as if he were the superintendent in the fullest sense of the term.

The employment of miners and assignment to their duties necessarily comes in direct conflict with the duty of instruction. The desire for promotion of the work and the largest possible yield of product has a natural and inevitable tendency to induce the foreman, acting as superintendent, to forego and neglect this particular duty, and also to permit men to work in dangerous places, contrary to the statutory duty of the foreman. Hence, if the operator confers such authority upon the foreman, he is not entitled to the benefit of the statutory provisions imposing duty of instruction upon the foreman and making it the duty of the miner to prop his room. In this respect, the whole spirit of the statute is violated.

Insufficiency of the evidence of authority in the mine foreman to employ and discharge men is relied upon in this connection, but, under principles declared in *Ewing* v. *Fuel Co.,* 65 W. Va. 730, the evidence warranted submission of the question to the jury. Kitchen testifies that he employed and discharged men generally. He said the company had a superintendent who had something to do with the employment and discharge of men, but this does not destroy the effect of his other testimony. He was competent to testify to his own agency. *Garber* v. *Blatchley,* 51 W. Va. 148; *Piercy* v. *Hedrick,* 2 W. Va. 458. He was in charge of the defendant's mine for more than a year and says he employed and discharged men generally. The exercise of these powers for so long a time is sufficient evidence of authority from the defendant, even though it had a superintendent who did something not named about the employment of men.

The decedent, a youth 17 years old, had worked in the mine as a trapper, driver and helper on a cutting machine. He had never operated a machine except as a helper under the supervision and direction of an experienced operator. About three days before his death, he was set to work by the mine foreman with this machine, in a room near the outcrop of the coal where the roof was dangerous by reason of what are called hill seams and previous blasting in the entry which necessarily loosened the slate to some extent.

Evidence tending to prove the unsuitableness of the machine for use in such a room was admitted over the objection of the defendant. The company had several machines, one of the Sullivan type and all the others of the Harrison make, and witnesses were permitted to say it was peculiarly dangerous to use the Sullivan machine in a room in which the top was loose or dangerous, because its use was likely to jar slate or rock down from the roof. A comparison of the machines in this respect was made by the witnesses, showing that the Sullivan machine struck heavy blows and had a heavy rebound, while the Harrison machines struck much lighter blows without giving any jar from rebound, and were not so likely to cause a fall of slate. This evidence was admissible in connection with the assignment of an inexperienced and youthful servant to a dangerous place for work. The rule of law absolving employers from duty to furnish servants particular kinds of machines and appliances has no application under the circumstances. Had the servant in question been an adult or fully instructed and advised as to the danger of using such a machine in such a place, the principle relied upon would apply, but there is no evidence of such instruction. Kitchen says he told him to be careful with the machine and that the roof of that room was not like the roof in rooms in which he had been working, but this falls far short of full information as to the danger and means of avoidance. Minor servants are entitled to more than mere notice. The law imposes upon the master duty to instruct them. The decedent should have been advised as to the necessity for props, their number and arrangement in view of the unusual character of the roof and also as to the kind of precautions to adopt in the operation of the machine.

In substance and effect, defendant's instruction No. 15, refused, is covered in its instructions Nos. 11 and 13. Its purpose was to give the defendant the benefit of the presumption of capacity on the part of the decedent to comprehend and avoid danger and place upon the plaintiff the burden of rebutting it by proof. The other two instructions do that, not in the same, but equivalent, terms.

Seeing no error, justifying the action of the court in setting aside the verdict we reverse the order complained of and render a judgment on the verdict.

*Reversed and Rendered.*