# CHARLESTON.

STROTHER, ADM'R V. UNITED STATES COAL & COKE CO.

Submitted January 15, 1918.    Decided January 22, 1918.

1. MASTER AND SERVANT—*Injury to Servant—Negligence of Mine Foreman—Statutory Duty.*

The business of making or directing excavations for overcasts in the roof of haulways or air courses in a coal mine as the operations therein progress for properly ventilating the mine and of making the places of work therein safe is by section 36d (2), of chapter 15H, Barnes Code, 1916, devolved upon the statutory mine foreman, and his negligence in the performance of these duties, unless he is authorized by the master to represent him in other ways incompatible with his statutory duties, as in the employment and discharge of miners, can not be imputed to the owner of the mine and render him liable for personal injuries sustained due to such negligence.    (p. 659).

2. SAME—*Mine Foreman—Statutory Duties—Proof.*

Authority of the mine foreman to represent the mine owner outside of his statutory duties must be proven either by express authority given, or by such open, apparent and notorious acts and conduct on the part of the mine foreman that it is evident they must have been known to the owner of the mine, and approved and ratified by him; and proof of one or two isolated instances thereof is not sufficient to establish such authority of the mine foreman and render the owner liable in damages for injuries due to the negligence of the mine foreman in the discharge of his statutory duties.    (p. 659).

3. CASE DISTINGUISHED.

The facts in this case distinguish it from *Gartin* v. *Draper Coal & Coke Co.,* 72 W. Va. 405, 416, and *Haptonstall* v. *Boomer Coal & Coke Co.,* 78 W. Va. 412.    (p. 662).

4. MASTER AND SERVANT—*Injury to Servant—Master's Liability—Imputed Negligence of Mine Foreman.*

On the case presented the defendant was entitled to its nine several instructions to the jury absolving the owner of the mine from liability for personal injuries sustained by plaintiff's decedent, imputable to the negligence of its mine foremen in the discharge of their statutory duties.    (p. 662).

Error to Circuit Court, McDowell County.

Action by James A. Strother, administrator, etc., against

the United States Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside, and new trial awarded.*

*Anderson, Strother, Hughes & Curd,* for plaintiff in error.
*Strother, Taylor & Taylor,* for defendant in error.

MILLER, JUDGE:

Plaintiff's decedent, Henry Gilbert, an adult, employed in March, 1912, as a water bailer and general laborer in defendant's coal mine, was injured and killed, by the falling of slate upon him while at work in the mine. The place of the injury was in the main entry and haulway at a point where the mine foremen with the slate gang were engaged in excavating for putting in what is called an overcast, as a part of the ventilating system of the mine. This excavation was necessarily made in the roof of the mine over the haulway and air course to the height of from fifteen to eighteen feet, and was to be constructed of concrete, lumber or other material. Hawthorne, the chief mine foreman, had general charge of this work, and had personal supervision over the work on the day shifts, and Mitchell, his assistant mine foreman, had charge of the work at night. On the day shift before Gilbert sustained his injuries the miners had shot or pulled down considerable slate, stone and coal, which under the direction of Mitchell the foreman on the night shift was ordered to be loaded into cars to be hauled out of the mine. Hawthorne, foreman on the day shift, had instructed his assistant Mitchell that the roof on the left side of the entry was dangerous because of the overhanging slate, and not to allow the men under him to work there, but that on the right side of the entry and track the place was safe and to confine the men to that side in their work of loading the slate and coal already down. Mitchell swears that he did so instruct the men and warned them as directed, a fact however on which the evidence is conflicting. And it is also proven that some one or more of the men regarded the overhanging slate dangerous and refused to work under it, and two of them got up and bored two drill holes in the slate and charged them with

monobell, an explosive, and attached wires or cables thereto and sent for Mitchell to come and shoot the slate down, and who did appear, but said the place was perfectly safe at least on the right side where he had directed the men to work, and that he had no orders from Hawthorne to shoot down any more slate and refused to do so.   Shortly afterwards the overhanging slate fell killing Gilbert and injuring one or two of the other miners engaged in the work.   The evidence is somewhat conflicting whether it fell directly down on the track where Gilbert is shown to have been standing or upon the slate or "gob" shot down by the day force, and from there slid down upon him with the fatal result stated.

That the work of putting in overcasts for ventilating mines and making the roofs thereof safe and free from overhanging slate are duties devolved by section 36d (2), of chapter 15H, Barnes Code, 1916, on the mine foreman, our decisions fully attest.   The only basis for recovery seriously relied on by counsel for plaintiff is the assumption that both Mitchell and Hawthorne, in addition to their statutory duties, also represented the owner as superintendents of the mine, and had authority to employ and discharge the men, wherefore notice to them was notice to the owner of the dangerous condition of the mine where Gilbert was set to work and of their alleged negligence in failing to instruct and to warn him.   That Gilbert was entitled to notice and warning, and if not given by Mitchell or Hawthorne, they were negligent, is conceded; but as these were statutory duties of the mine foremen, fellow servants of deceased, the defendant is not liable therefor, unless they also represented the master in other and non assignable duties in the operation of the mine.

So our decision must turn on the correct determination of this important question.   Of course defendant denies any such authority to represent it, and shows that besides the mine foremen employed it had a general superintendent of all its twelve operations, and also a superintendent of each mine.   The burden of proof of other agency of the mine foremen, under the circumstances, was clearly upon the plaintiff.

There was not a particle of direct proof of any such authority.   It was fully proven that both Mitchell and Haw-

thorne were experienced and competent mine foremen, and that each had certificates as such from the mining department of the state. The only evidence relied on by plaintiff is, first, that Mitchell, the night foreman, and on the night of Gilbert's injuries, at the latter's request, permitted or directed him to work at the place of his injuries. Gilbert had previously been at work in the mine, mainly in bailing water for three or four months, and there can be no doubt of Mitchell's authority under the statute to requisition miners at work in the mine to aid in the performance of the duties devolved upon him by statute. The proper ventilation of the mine is as much under the control of the mine foreman as is the draining and removing of water therefrom, and necessarily the men employed in the mine may be called upon and assigned to the work of so rendering the mines safe, else the duties so imposed could not be performed. Sub-section (e) of said section 36d (2) also imposes upon the mine foreman the duty of instructing miners, and sub-section (f) the duty of making the working places safe, etc., so that Gilbert was simply performing work which by the statute Mitchell had the right to call upon him to do. He was not originally employed by Mitchell, and the only evidence of his employment by him was his assignment to work on the night in question. One witness who had been working in the same mine swears that Mitchell employed him on the evening of the accident to work at the same place; he says he first went to Hawthorne, but does not say that Hawthorne employed him, but says, after seeing Hawthorne he went to work and worked all told on two shifts; then under Mitchell during one shift, and that he afterwards left and was never back there afterwards. Another witness for plaintiff when asked whether Mitchell ever hired or discharged men, answered, that he did not know "whether he hired, but he discharged"; and when asked whom he discharged, said "He discharged me." But he admits he was not employed by Mitchell and does not prove by whom he was employed. The circumstances of the alleged discharge he does not give.

This is the only evidence of any authority of Hawthorne or Mitchell to employ and discharge miners, except that when

Mitchell was on the stand as a witness for defendant and denied that he had employed Gilbert, he was asked whether he knew who did employ him, and answered that Hawthorne had done so; but in the same connection he said he did not remember of being present when he was so employed, nor does he say nor was he asked to say how he knew Hawthorne employed Gilbert, nor when nor in what capacity.

There being no direct evidence of general authority given either Hawthorne or Mitchell to employ or discharge miners, or to act in any other capacity than as statutory mine foremen and quasi agents of the state, was the evidence of the single instance of the employment of Gilbert by Hawthorne, if admissible as hearsay, and of the discharge and employment by Mitchell of the two other witnesses, sufficient to establish the general agency of either Mitchell or Hawthorne? We think not. Considered in connection with the fact that defendant had a general superintendent of this mine, the doubtful and unsatisfactory evidence of the two witnesses referred to, it is not in our opinion sufficient to establish even a prima facie case of general authority or any authority to employ and discharge miners. Besides, why was not direct proof on this question introduced. Mitchell, Hawthorne, and Dunn, the superintendent, were all three put upon the witness stand by defendant, and the plaintiff was given ample opportunity to prove the fact of such authority. The burden rested upon him, and as a prima facie case was not presented we do not think the law would justify us in assuming such authority so as to place liability on the defendant for the negligent acts of the mine foremen, if any, in failing to instruct, warn, or furnish Gilbert a reasonably safe place to work. Either of these witnesses were, according to our decisions, competent to testify as to such agency, and if plaintiff was not able to make a case by proof of a course of conduct or dealing between defendant and said mine foremen, he might have proven their supposed authority by these witnesses. *Gartin* v. *Draper Coal & Coke Co.*, 72 W. Va. 405, 416, citing *Garber* v. *Blatchley*, 51 W. Va. 148, and *Piercy* v. *Hedrick*, 2 W. Va. 458.

The mere fact that one assumes to act as the agent of

another is not alone sufficient to show such agency. And to establish such agency without proof of express authority by his acts alone those acts must have been so open, apparent and notorious that it is evident they must have been known to the principal. *Black Lick Lumber Co.* v. *Camp Construction Co.,* 63 W. Va. 477. The mere fact that Mitchell and Hawthorne were mine foremen employed in the mine, without more, did not authorize any one to assume that they represented the master in any other capacity than as statutory officers. And their duties as mine foremen being often incompatible with their duties as representatives of the owner, ought not the presumption to be rather that mine foremen have no authority to act for the master or owner of the mine?

The foregoing conclusions distinguish this case from the cases of *Gartin* v. *Draper Coal & Coke Co., supra,* and *Haptonstall* v. *Boomer Coal & Coke Co.,* 78 W. Va. 412, 89 S. E. 724, cited and much relied on by plaintiff's counsel, and we hold them inapplicable to the facts presented here.

All other questions presented and argued by counsel for plaintiff based on their theory of general authority in the mine foremen to employ and discharge employes or to otherwise represent the defendant, may be laid aside as not properly arising on the record.

The only other questions that need be dealt with relate to the defendant's instructions, nine in number, and all rejected by the court. Without repeating them here we may say generally that they all propound correct legal propositions applicable to the facts proven in this case. They would in general absolve a mine owner from liability on account of negligence in the performance by mine foremen of their statutory duties, in the absence of competent and sufficient evidence showing authority by the master to represent him outside of those statutory duties, absent, as we hold, in this case, and unless on another trial a case justifying recovery should be presented it will be the duty of the court, if requested, to give these instructions or such of them as may be then applicable to the case presented.

We are, therefore, of opinion to reverse the judgment, set aside the verdict, and to award the defendant a new trial.

*Reversed, verdict set aside, and new trial awarded.*