66 S.E.2d 201 (1950)
136 W.Va. 521
ALGOMA COAL & COKE CO. et al.
v.
ALEXANDER.
No. 10258.
Supreme Court of Appeals of West Virginia.
Submitted September 12, 1950.
Decided December 5, 1950.
Rehearing Denied February 12, 1951.
Dissenting Opinion July 30, 1951.
William C. Marland, Atty. Gen., Londo H. Brown, Asst. Atty. Gen., for appellant.
Hillis Townsend, M. E. Boiarsky, Charleston, for C. E. Jones, amicus curiae.
Charles E. Mahan, Fayetteville, Rolla D. Campbell, Huntington, R. S. Spilman, Jr., R. G. Kelly, Frank R. Lyon, Jr., all of Charleston, for appellees.
GIVEN, Judge.
This proceeding was instituted under the Uniform Declaratory Judgments Act, now Code, 55-13-1, in the Circuit Court of Kanawha County, by the Algoma Coal and Coke Company and fifty-seven other coal mine operators, against Arch J. Alexander, individually, and as Chief of the Department of Mines of West Virginia. The object of the proceeding is to obtain a declaratory judgment as to whether the provisions of Article 2 of Chapter 22 of the Code, as amended, prevent a mine foreman, assistant mine foreman or section foreman from acting as a fire boss during the same shift or day in the same mine or section. The appellant, Arch J. Alexander, individually and as Chief of the Department of Mines of West Virginia, demurred to the petition, the ground of *202 the demurrer being that "The statutes in the premises, and particularly Article 2, Chapter 22 of the Code of West Virginia, prohibit one who holds a fire boss certificate and who acts as a section foreman from acting in the capacity of fire boss during the same shift or day in the same mine or section." The circuit court, on December 9, 1949, overruled the demurrer, held that "Article 2 of Chapter 22 of the Code of West Virginia of 1931 as amended, does not forbid one who holds a fire boss certificate and who acts as a section foreman from fire bossing during the same shift or day in the same mine or section", and that "The plaintiffs have a lawful right to employ persons who are duly and lawfully qualified as fire bosses and to have such persons perform duties as section foreman and perform duties as fire bosses during the same day or shift in the same mine or section * * * ", and dismissed the petition. To review the action of the circuit court this Court, on February 6, 1950, granted this appeal.
The appellees allege in the petition for a declaratory judgment that they are corporations authorized to do business in West Virginia; that they are engaged in the business of producing bituminous coal; that the mines operated by them are subject to the Department of Mines of West Virginia and are required to be fire bossed; that each of the plaintiffs employs a mine foreman and a number of assistant mine foremen, sometimes called section foremen, and a fire boss; that each of such employees holds a "certificate of competency for the position of mine foreman and for the position of fire boss issued to him by said Department of Mines"; that the section foremen act in supervisory capacities in directing production work and "also perform duties of fire bosses in their respective sections"; that such employees perform all the duties required by Article 2 of Chapter 22 of the Code, as amended; that some of said employees perform duties as foremen and as fire bosses in the same mine and section during the same day or shift; that such method of fire bossing such mines is in conformity with the custom and practice existing for more than twenty years and that "section foremen have been found to be better qualified and equipped than any other persons to fire boss mines"; that on January 17, 1949, the Chief of the Department of Mines issued a directive to all administrative assistants of the department to the effect that thereafter "No mine foreman, section foreman, or assistant foreman, acting as such, can legally fire boss a mine", and that such directive and the orders issued thereunder "are unlawful and without warrant of authority by statute or otherwise * * *". Other allegations of fact will be referred to later in this opinion.
The defendant would justify the issuance of the directive by an interpretation of the statutes relating to the employment by the operator of a fire boss and mine foreman and upon an opinion of the Attorney General of the State of West Virginia. Various sections of Article 2, Chapter 22 of the Code, as amended, relate to the employment of a fire boss by the operator and the duties of such fire boss. Sections 42 and 43 read:
"It shall be the duty of every mine owner or operator in this State, whose mines are known to liberate fire damp or other dangerous gas or gases, to employ a fire boss, or bosses, if necessary, who shall be citizen and resident of this State, and who shall hold a certificate of competency for such position issued to him by the department of mines, after taking an examination held by the department of mines under its rules and regulations. He shall have such knowledge of fire damp and other dangerous gases as to be able to detect the same with the use of safety lamps, and shall have a practical knowledge of the subject of the ventilation of mines and the machinery and appliances used for that purpose, and shall be a person with at least three years' experience in mines liberating explosive gases.
"It shall be the duty of the fire boss or bosses, where employed in such gaseous mines, to prepare a danger signal with red color at the mine entrance, and no person except the mine owner, operator or agent, and only then in case of necessity, shall pass beyond this danger signal until *203 the mine has been examined by the fire boss and the same or certain parts thereof reported by him to be safe. It shall further be the duty of the fire boss or bosses to go into all the working places of such mine or mines, where gas is known to exist, or liable to exist, and carefully examine the same with a safety lamp, and do, or cause to be done, whatever may be necessary to remove from such working place or places all dangerous or noxious gases, and make the same safe for persons to enter therein as workmen. Such examination and removal of the gases shall begin within three hours before the time each shift commences work, and it shall be the duty of the fire boss at each examination to leave evidence of his presence at the face of every place examined, by plainly marking on a board at the face for that purpose the date of examination. If the mine is safe, he shall remove the danger signal at the mine entrance, or change the color thereof to safety, in order that the employees may enter such mine and begin work."
Section 44 requires that "The fire boss shall, upon having completed the examination of the mine before each shift, make a written record of the condition of the mine within a book", provided for that purpose, and that the book shall at all times be kept at the mine subject to inspection by the district mine inspector or Chief of the Department of Mines. Section 45 provides that "In the performance of the duties devolving upon the fire bosses they shall have no superior officers, but all the employees working inside of such mine or mines shall be subordinate to them in their particular work." Section 46 makes it a misdemeanor for "any person to enter" a mine at the beginning of any shift until the signal required by Section 43 "has been given by the fire boss", except "under the direction of the fire boss", and then only for the purpose of "making the mine safe". Section 54 requires that "All places in live sections that are temporarily abandoned shall be examined as live workings by the fire boss on regular inspections". Section 16 requires that all mine foremen and fire bosses "employed in gaseous mines shall, at all times, carry an appoved flame safety lamp for the purpose of detecting the presence of explosive gas, such lamp to be kept lighted at all times, when in use inside the mines." Other sections relating to fire bosses are, we believe, not material to the decision herein.
Various sections of Article 2 relate to the appointment by the operator of mine foremen and their duties. Sections 47 and 48 read:
"In every coal mine where five or more persons are employed in a period of twenty-four hours, the operator or agent shall employ a competent and practical inside overseer, to be called mine foreman, who shall be a citizen and resident of this State, having had at least five years' experience in the working, ventilation and drainage of coal mines, and who shall hold a certificate of competency for such position, issued to him by the department of mines, after taking an examination held by the department of mines under its rules and regulations. In mines in which the operations are so extensive that all the duties devolving upon the mine foreman cannot be discharged by one man, competent persons having had at least three years' experience in coal mines may be designated and appointed as assistants, who shall act under the mine foreman's instructions, and shall be responsible for their conduct in the discharge of their duties under such designation or employment."
"The duties of the mine foreman shall be to keep a careful watch over the ventilating apparatus, the airways, traveling ways, pumps and drainage. He shall see that as the miners advance their excavations proper break throughs are made as required by law to properly ventilate the mine; that all loose coal, slate and rock overhead in the working places and along the haulways are removed or carefully secured so as to prevent danger to persons employed in such mines; and that sufficient props, caps and timbers, as nearly as possible of suitable dimensions, are furnished for the places where they are to be used, and such props, caps and timbers shall be delivered and placed at such points *204 as the rules for the government of each mine provides for them to be delivered. The mine foreman shall have all water drained or hauled out of the working places, where practicable, before the miners enter, and such working places kept dry as far as practicable while the miners are at work. It shall be the duty of the mine foreman to see that the cross cuts are made as required by law, and that the ventilation is conducted by means of such cross cuts through the rooms by means of check doors placed on the entries or other suitable places, and he shall not permit any room to be opened in advance of the ventilating current. The mine foreman shall measure the air current with an anemometer at least twice each month at the inlet and outlet and at or near the faces of the advanced headings, and shall keep a record of such measurements in a book having a form prescribed by the chief of the department of mines. Sign boards directing the way to outlet or escapeways shall be conspicuously placed throughout the mine."
Section 49 commands the mine foreman to require slopes, engine planes and haulage roads to be of sufficient width to permit persons to pass moving cars with safety, or that proper refuge holes be made. Section 50 requires him to provide, in haulways where hauling is done by machinery, a proper system of signals "and a conspicuous light on the front and rear of every trip or train of cars when in motion in a mine". Section 51 requires that he shall have proper bore holes kept in a "mine suspected of containing inflammable gases". Section 53 requires that the mine foreman "visit and carefully examine each working place in the mine each day", directs that each working place be secured by props or timbers, and that should he "find a place to be in a dangerous condition, * * * not leave the place until it is made safe, * * *."
Section 54 provides that the mine foreman shall see that every mine liberating explosive gas is kept free of standing gas in all working places and roadways; that any accumulation of explosive or noxious gases in any worked out or abandoned portion of the mine be removed as soon as possible and that proper danger signals be posted as to worked out and abandoned mines. Section 55 requires that "The mine foreman shall give prompt attention to the removal of all dangers reported to him by his assistants, the fire boss, or any other person", and after inspection to "remove the danger at once", to give notice thereof and "at least once each week, travel and examine all the air courses, roads and openings that give access to old workings or falls, and make a record of the condition of all places where danger has been found, with ink, in the book provided for that purpose." Section 56 requires to comply with any of the "requirements of these sections, and it shall then become the duty of the operator" to at once remedy the matter complained of, and makes it a misdemeanor for any operator to refuse to comply. Section 57 states that "The mine foreman shall also, each day, read carefully and countersign with ink all reports entered in the record book of the fire bosses." Section 82 makes it a misdemeanor for any "mine foreman, or other employee of any coal company, or any other person," to violate any of the provisions contained in Sections 4 to 81, inclusive of Article 2. Other duties and obligations are placed upon the mine foreman by these and other sections. We think, however, that sufficient reference has been made to such duties and obligations to indicate the nature, scope and extent thereof.
Section 1 of Article 2 defines "operator" as "any firm, corporation, or individual operating any coal mine, or any part thereof", and "mine foreman" as "the person whom the operator or superintendent shall place in charge of the inside, workings of the mine and of the persons employed therein." The article speaks of assistant foremen but not of section foremen. It also speaks of fire bosses but not of an assistant fire boss or bosses. In this opinion mine foremen will, unless otherwise indicated, include assistant mine foremen, section foremen, or any person, however designated, performing the duties imposed *205 upon a mine foreman by the provisions of Article 2.
The opinion of the Attorney General, dated January 15, 1949, states the question to be "The legality of the practice of allowing section bosses to act in the dual capacity of fire boss." After a full discussion of the point the opinion concludes: "We believe a reasonable inference to be that if the Legislature had felt each officer could act in dual capacity, the statute would have so stated. But since nothing is provided on this point, and since their respective duties are entirely different, we are inclined to the opinion for the reasons given, that the law did not contemplate one acting in the capacity of the other." See Opinions Attorney General, 1949-50. The directive of the Department of Mines issued pursuant to the opinion, in so far as material here, states that "No mine foreman, section foreman or assistant foreman acting as such, can legally fire boss a mine", and that "Mines may be fire bossed only by a certified fire boss, employed as a fire boss." All administrative assistants, inspectors at large and district mine inspectors of the Department of Mines were specifically instructed to enforce the directive.
The provisions of the statutes relating to employment of a mine foreman by the operator were first enacted by the Legislature in 1883. See Acts, 1883, Chapter 70. They were taken from similar statutes of Pennsylvania. Williams v. Thacker Coal & Coke Co., 44 W.Va. 599, 30 S.E. 107, 40 L.R.A. 812. A mine "boss" or mine foreman employed under this section is a fellow servant of those employed to work in the mine by the operator. Reese v. Biddle, 112 Pa. 72, 3 A. 814; Crockett v. Black Wolf Coal & Coke Co., 75 W.Va. 467, 84 S.E. 948. Likewise a fire boss is a fellow servant of those employed to work in the mine by the operator. Squilache v. Tidewater Coal & Coke Co., 64 W.Va. 337, 62 S.E. 446; Bralley v. Tidewater Coal & Coke Co., 66 W.Va. 278, 66 S.E. 684, 40 L.R.A.,N.S., 945, 19 Ann.Cas. 510. Mine foremen, assistant mine foremen and fire bosses are statutory officers and in the performance of their statutory duties are representatives of the State, not of the mine owner, the men who work in the mines, or of any union. McMillan v. Middle States Coal & Coke Co., 61 W.Va. 531, 57 S.E. 129, 11 L.R.A.,N.S., 840; Gartin v. Draper Coal & Coke Co., 72 W.Va. 405, 78 S.E. 673; Strother v. United States Coal & Coke Co., 81 W.Va. 657, 95 S.E. 806; Holly v. McDowell Coal & Coke Co., 4 Cir., 203 F. 668. The duties imposed upon a mine foreman, assistant mine foreman or fire boss by the statutes are nonassignable. State ex. rel. Money Service Co. v. Stuart, 112 W.Va. 370, 164 S.E. 409, 42 Am.Jur., Public Officers, Section 70.
The present practice or custom of fire bossing a mine is, as stated in appellees' brief:
"In multiple-shift operations, i.e., where two or three shifts work in the same day, there are mine foremen and section foremen on duty for each shift. Fire bossing is carried on in the following manner: Within three hours prior to the first shift fire bosses go into all of the working places and make inspections and examinations with safety lamps and leave evidence of such examinations at the face of every place examined and then report the inspected sections to be safe, if that be the case, and then the workmen enter the mine. Each fire boss makes a written record of his inspection in a book kept for that purpose and the mine foreman at each mine reads and countersigns the written reports of the fire bosses. After these first shift or `pre-shift' fire bosses finish their inspections, they perform such other work as is assigned to them.
"Near the end of the first shift each section foreman makes an inspection and examination of each of the working places within his section in exactly the same manner and does all of the things that had been done by fire bosses prior to the first shift. In other words, he fire bosses the section assigned to him and with which he is familiar. He does so as fire boss for the next following shift. Then the second shift enters. When a third shift is operated, the section foremen on duty during' *206 the second shift make the fire boss runs or inspections just prior to the beginning of the third shift. * * *."
Plaintiffs contend that the applicable sections of Article 2 contain no ambiguity and that they do not show any legislative intent to "prohibit fire bossing by section foremen". Defendant also says that there exists no ambiguity, in the statutory provisions, but contends that when read together the several sections clearly show a legislative intent to require fire bossing to be done by an individual employed for that special purpose and not by a mine foreman, assistant mine foreman or section foreman, who acts as such during the same day or shift. This, we believe, is the controlling question before the Court.
The point at issue has not been determined by this Court. However, we find that the status and duties of a fire boss and of a mine foreman have been considered in a number of decisions. In Squilache v. Tidewater Coal & Coke Co., supra, this Court stated, 64 W.Va. on page 343, 62 S.E. on page 449." * * * It is clear, from these provisions, that these two officers are the absolute masters of all matters pertaining to the inside working of the minethe fire boss, so far as relates to the inspection thereof for dangerous gases, and the notice and warnings of its condition to be given on the outside; the mine foreman, of the operation of and control over the ventilating apparatus and the general conduct of the operations; the duties of the one supplementing and correlating those of the other.* * *"
Here we find the Court speaking of "these two officers" and saying in effect that the duties of the fire boss supplement and correlate the duties of the mine foreman.
Graham v. Newburg Orrel Coal & Coke Co., 38 W.Va. 273, 18 S.E. 584, decided about six years after the first enactment of the fire boss statute in this State, holds, as a part of Point 1 of the syllabus, that "It is the duty of the operator of every coal mine to provide ample means of ventilation, * * *. It is also his duty to employ a competent fire boss to examine with safety lamp, * * * places where dangerous and noxious gas is known to exist, or is liable to exist. It is also his duty to employ a competent mining boss to keep careful watch over the ventilating apparatus and the air ways, * * *." This holding would seem to clearly imply that two individuals must be employed by the operator, the fire boss and the mine foreman, and not that one individual can serve in the two positions. In Bralley v. Tidewater Coal & Coke Co., supra, the Court stated, 66 W.Va. at page 281, 66 S.E. at page 685:
"* * * that these officers, the mine boss and the fire boss, were to have no respondeat superior with respect to those duties specifically devolved upon them by the statute, but that they, within their several spheres, should be made the responsible agents, and be independent, and from under the control of the operator in the discharge of those duties, with authority given them by the statute to call upon and require of the operator that he provide them with the means and materials for the proper performance thereof.
"In consonance, therefore, with our previous decisions, we must hold the mine boss and fire boss fellow servants with the miner in the performance of the duties imposed upon them respecting the ventilation of the mine, including therein the duty of the mine boss to make break-throughs, and to use brattices for such ventilation." (Italics supplied).
Here again the Court treats the two statutory offices as separate and distinct.
In McMillan v. Middle States Coal & Coke Co., supra, the Court, speaking of a mine boss, said, 61 W.Va. at page 534, 57 S.E. at page 130: "* * * He is really the representative of the state appointed for the protection of the lives of the miners. He has been said not to be the officer of the corporation. The company was bound to appoint him whether it would or no. He is put into the mine by the power of the state to watch the condition of the mine, to hold the mine operator up to his duty in certain things. The statute prescribes certain duties for him. He has no others. He has power to watch the condition of the mine in certain respects, to detect its wants, to *207 demand their cure, and to bring the mine operators up to the standard required by the act. It has been said that he performs functions for the state, in behalf of the miners, and is not the representative of the coal operator, unless it be shown that the coal operator, by his own act, has committed other duties and granted powers to him. * * *" Except as they relate to the statutory duties imposed, the same statements may be made as to a fire boss.
In Holly v. McDowell Coal & Coke Co., supra, a case wherein the statutes involved here were considered, the Court held, as set out in Points 5 and 6 of the head notes:
"Under Code Supp.1909 W.Va. c. 15H (sections 400-454), regulating the operation of coal mines, and providing that the inside workings should be under the exclusive control of a mine foreman having specified qualifications and a fire boss, who are not responsible for their acts to the operator, there being no claim, in an action for death of a miner due to the fall of material from the roof of an entry, that the mine foreman had not the qualifications specified by the statute, the operator was not liable for intestate's death, because it was due to the foreman's negligence in failing to discover the dangerous portion of the roof of the entry and repair the same.
"Code Supp.1909 W.Va. c. 15H (sections 400-454), regulating the operation of all coal mines, and placing the entire internal control in a mine foreman employed by the operator having specified qualifications and a fire boss, who are responsible for their acts, not to the operator, but to the state, is not unconstitutional, as depriving miners injured or killed by the negligence of the mine foreman of equal protection of the laws."
Other cases having some bearing upon the point at issue are Strother v. United States Coal & Coke Co., supra; Haptonstall v. Boomer Coal & Coke Co., 78 W.Va. 412, 89 S.E. 723; Cheeks v. Virginia-Pocahontas Coal Co., 74 W.Va. 553, 82 S.E. 756; Gartin v. Draper Coal & Coke Co., 72 W.Va. 405, 78 S.E. 673; Sprinkle v. Big Sandy Coal & Coke Co., 72 W.Va. 358, 78 S.E. 971; and Peterson v. Paint Creek Collieries Co., 71 W.Va. 334, 76 S.E. 664. While the cases cited do not expressly decide the point at issue, we believe they clearly recognize the position or office of fire boss as being separate and distinct from the position or office of mine foreman or assistant mine foreman, and recognize the legislative intent that the two positions or offices be filled by different individuals.
Article 2, Chapter 22, relates, in its entirety, to the operation of coal mines. Therefore, the several sections thereof must be considered in pari materia. Considered separately they would have only one meaning. There is no word or sentence contained in any one of them which does not have a clear and definite meaning. It is only when read together, and an attempt is made to apply them to the present practice of fire bossing a mine, that there appears any possible doubt as to the legislative purpose intended. To make this clear, let it be supposed that all references made in the sections relating to a fire boss or bosses should be repealed, leaving as part of the law the present provisions relating to mine foremen and assistant mine foremen. Could there be any doubt that it would still be the duty of the operator to employ a qualified mine foreman to perform the statutory duties required of that officer? Yet that was practically the situation previously, for the first Act of this State requiring the employment of a mine foreman was enacted by the 1883 Legislature, but the first Act providing for the employment of a fire boss was not enacted until 1887. It seems clear that had the Legislature intended that the duties of a fire boss be performed by a mine foreman it would have simply required of the mine foreman or assistant mine foreman the additional duties, instead of enacting a wholly different statute requiring the operator to employ a fire boss and particularly and separately describing the qualifications and duties of a fire boss.
Of some significance is the fact that the statutory qualifications required of a fire boss are in some particulars different from statutory qualifications required of a mine foreman, as will appear from a reading of the sections quoted. Of much significance *208 is the type of duties required of each; generally, the duties of a fire boss being to examine mines before the beginning of any work period for dangerous gases and to remove, or cause to be removed, any such gas before permitting workmen to enter the mine; generally, the duties of a mine foreman being to "keep a careful watch over the ventilating apparatus, the airways, traveling ways, pumps and drainage", and to otherwise make and keep the mine safe for those who work therein. Section 54 makes it also the duty of mine foremen to "see that every mine liberating explosive gas is kept free of standing gas in all working places and roadways", and in the same section it is provided that "All places in live sections that are temporarily abandoned shall be examined as live workings by the fire boss on regular inspections". Does it seem reasonable to infer that the Legislature intended that a mine foreman should perform the duties of a fire boss, when it provided in the same section that certain duties relating to dangerous gas should be performed by a mine foreman and that certain other duties relating to dangerous gas should be performed by a fire boss?
In a number of instances the statutory duties of a fire boss and of a mine foreman appear to be incompatible. Section 48 requires a mine foreman to keep a careful watch over the "ventilation and drainage of the mine at all times". How can he perform these duties while fire bossing the mine? Section 53 requires that in the event "the mine foreman or his assistants * * * find a place to be in a dangerous condition, they shall not leave the place until it is made safe, * * *." How can a mine foreman perform such duties and at the same time fire boss a mine? Section 57 requires that a mine foreman shall each day "read carefully and countersign with ink" reports of the fire boss. Would the Legislature have required a mine foreman to read and "countersign" his own report? Section 45 provides that fire bosses "shall have no superior officers" in the performance of their statutory duties. Is it consonant with reason and human experience to say that a mine foreman, however conscientious, can in one minute loyally represent the State in the performance of the statutory duties imposed upon him relating to matters of safety, and in the next minute loyally represent the operator in supervising the production of coal? It is very significant that nowhere is there any provision in the entire article, or any indication, that any of the statutory duties mentioned may be performed by either the fire boss or the mine foreman. Their respective duties are kept completely separate and distinct throughout the several sections.
In Gartin v. Draper Coal & Coke Co., supra, this Court held, Point 9, syllabus: "The positions of statutory mine foreman and superintendent of the same mine are incompatible in the sense that the owner of the mine cannot claim the protection of the statute against liability for negligence of the foreman in respect to common-law nonassignable duties imposed upon the foreman by the statute, if he employs the same person for both positions." [72 W.Va. 405, 78 S.E. 674.].
The discussion of the point in the opinion, page 415, of 72 W.Va., page 678 of 78 S.E., we think may be helpful here: "The ground of incompatibility of these two positions may be found in legal principles, outside of the statute. There may be a joint agency by contract, express or implied, but, in the absence of such an agreement, one person cannot take advantage of an agency created for the benefit of another and appropriate it or the fruits thereof to his own benefit. Rohrbough v. [United States] Express Co., 50 W.Va. 148, 40 S.E. 398; Bank v. [Ohio Valley] Furniture Co., 57 W.Va. 625, 50 S.E. 880, 70 L.R.A. 312. Surely the employer of a mine foreman, a quasi public agent whose duties are imposed and defined by law and involve conflict with the employer himself, cannot, by agreement with him, limit such duties or change their character. Nor can it be supposed the Legislature intended to authorize the existence of any relation between them that might constitute an inducement or cause for neglect of the performance of such duties. It is perfectly apparent that the position of superintendent, conferred upon a foreman, would, in many instances, have that effect. As mine foreman the employer *209 is supposed to have the safety of the men in mind at all times and, if necessary, to the exclusion of everything else. The superintendent has for his dominating purpose the production and marketing of coal for the profit of the owner. The two positions in the hands of the same man are thus naturally in conflict."
From these facts we necessarily conclude that there is no ambiguity in the statutes under consideration. It is clearly required that the fire bossing of a mine be done by a qualified individual employed for that specific purpose, and not by a mine foreman, assistant mine foreman or section foreman who acts as such during the same shift or day in the same mine or section. We think it clear that the Legislature intended that the statutory duties of a fire boss and the statutory duties of a mine foreman or assistant mine foreman should be performed by separate individuals. To hold otherwise would be to say that it is within the power of the operator, under the statutes, to assign such statutory duties to any person holding the necessary certificate of qualification from the Department of Mines. No such result could have been intended by the Legislature. In such circumstances the State would not be advised as to the responsibility of its officers or what officers were required to perform its commands.
Appellees contend, however, that the present practice of permitting section foremen to fire boss mines has existed for more than twenty years, and that the statutes have been interpreted by the Department of Mines to be in accord with the intention of the Legislature in the enactment of the statutes, and that such long practice and custom should now control the interpretation of the statutes, relying upon the rule that "A contemporary exposition of a statute, uncertain in its meaning, recognized and acquiesced in for a long period of time by the officers charged with the duty of enforcing it, the courts, the Legislature, and the people, will be adopted unless it is manifestly wrong." State v. Davis, 62 W.Va. 500, 60 S.E. 584, 14 L.R.A.,N.S., 1142. This rule, however, can have no application here for, as pointed out above, there exists no
ambiguity in the statutes. Moreover, there appears to have been a different practice previous to the beginning of the present practice for a period of approximately forty years immediately after the enactment of the statutes, and this Court, in a number of cases, has indicated that a different practice was intended.
Apparently the Department of Mines issues certificates of competency showing the holders thereof to be qualified to serve both as fire bosses and mine foremen, and appellees contend that this practice of the Department of Mines clearly recognizes the present practice and custom of fire bossing a mine as being legal. We think, however, that such a certificate should be regarded as authority to the operator to employ the holder thereof to serve in either capacity, not necessarily both.
Appellees also argue that the present practice of having a mine foreman or section foreman fire boss mines is the safest and the least expensive method. The question of the safest method of fire bossing a mine is, of course, one for the Legislature. We think, however, there is merit in the argument that safety will be promoted by requiring the "two officers" to perform their respective statutory duties, rather than by permitting one of such officers to perform all of such duties. As to any additional costs or additional employees required for the purpose of carrying out the mandate of the Legislature, we point to the statement of the Court in an opinion by Judge Brannon, in Graham v. Newburg Orrel Coal & Coke Co., supra, decided soon after the enactment by this State of the first fire boss statute, 38 W.Va. at page 275, 18 S.E. at page 585 of West Virginia State Reports: "* * * The statute * * * requires the employment by the operator of a competent person, called `fire boss,' in all mines subject to gas, and he is required to examine every working place and all other places where gas is known to exist, or is liable to exist, with safety lamps, immediately before each shift; and the workman must not enter, * * * any working place, until it has been examined by a fire boss and reported safe. All this shows plainly that it is the *210 imperative duty of the owner of the mine to search for this dangerous gas, cost what it will. * * *"
Under these statutes the employer is ordinarily relieved from liability as to any negligence or improper action on the part of the fire boss or the mine foreman. This being true, can we say that there will be additional expense imposed upon the operator in carrying out the mandate of the Legislature? Certain other contentions are made by appellees, but in view of what has been said we believe further discussion unnecessary.
From the conclusions reached it necessarily follows that the demurrer of appellant to the petition for a declaratory judgment should have been sustained by the Circuit Court of Kanawha County, and that the judgment of that court must be reversed.
Reversed.
HAYMOND, Judge (dissenting).
Believing as I do that the conclusion reached by the majority of the Court in this proceeding is entirely wrong, logically unsound, and places a distorted and totally unwarranted construction upon statutory provisions which are plain and unambiguous and are not subject to judicial interpretation, I respectfully but emphatically dissent.
The issue in this case is clear and simple. It is not complicated. It is simply whether the applicable provisions of Article 2, Chapter 22, Code, 1931, as amended, in force when this proceeding was instituted, prohibit a duly qualified person, holding a certificate of competency from the State Department of Mines, employed by an operator of a coal mine in this State as a section foreman, and who, as such, works under the direction and the supervision of a qualified mine foreman, from performing the duties of a fire boss, or, as otherwise stated, whether any person, even though qualified and certified by the State Department of Mines, other than a regularly employed fire boss, can perform the duties imposed by statute upon such fire boss.
For at least twenty years the established mining practice in this State has been that a section foreman who holds a certificate of competency from the State Department of Mines to act as a fire boss may perform in the same mine on the same day the duties imposed by statute upon a regularly employed fire boss. This course of conduct was recognized as valid by the coal operators, the State Department of Mines, and the Bureau of Mines of the United States Department of the Interior, is permitted by the Mine Safety Code, and has been agreed to by the United Mine Workers of America in its present contract with the coal operators. The practice has not only been followed for many years in the coal mining industry in this State, but has been considered and demonstrated to be both safe and practical. The decision of the majority, by placing a forced and wholly unwarranted construction upon plain and unambiguous statutory provisions, bans and prohibits this well established practice and renders it necessary for every operator of a gaseous coal mine in this State in which the men work on multiple shifts to employ regularly a fire boss to examine the mine before the start of each working shift. In brief, instead of one regularly employed fire boss to examine the mine within three hours before the employees on the first shift enter it and a regularly employed section foreman, holding a certificate of competency, who on each succeeding shift, on the same day, examines the mine before the men on the next shift enter it, the operator of the mine, in which there are three shifts daily, must now employ three regular fire bosses to perform duties which in each instance will require no more than three hours time for each fire boss. This new and surprising requirement will not increase or promote the safety of the mine but will necessitate the employment of additional regularly employed fire bosses whose daily duties continue for only about three hours, and will substantially increase the cost of production of coal at every gaseous coal mine in this State. Because the language of the applicable sections of Article 2, Chapter *211 22 of the Code, 1931, as amended, is plain and unambiguous, permits of no judicial construction, and manifestly does not prohibit a qualified section foreman, who holds a certificate of competency from the State Department of Mines which entitles him to act as a fire boss, from performing those duties, I am unwilling to concur in a result which places a substantial financial burden upon the coal mining industry and the coal consuming public, and is totally devoid of any justifiable benefit to anyone other than the persons who, though unnecessary for that purpose, must now be employed as additional fire bosses in many coal mines in this State.
The pertinent portions of Article 2, Chapter 22, Code, 1931, as amended, are Sections 42, 43, 44, and 45, which deal with the qualifications and the duties of a fire boss, Sections 47, 48, 49, 50, 51, 53, 54, 55, 56, and 57, which deal with the qualifications and the duties of a mine foreman, and Section 16 which relates to mine foremen and fire bosses and requires them, in gaseous mines, to carry an approved flame safety lamp for the purpose of detecting explosive gas. Some of these sections are set forth in full in the majority opinion and they will not again be quoted in this dissent.
By various sections of the statute relating to a fire boss the owner or the operator of every coal mine in this State which is known to liberate fire damp or other dangerous gas or gases is required to employ a fire boss, or bosses if necessary, who must be a citizen and a resident of this State and hold a certificate of competency as a fire boss from the State Department of Mines. He must have such knowledge of fire damp and other dangerous gases as will enable him to detect them through the use of safety lamps and a practical knowledge of the subject of ventilation of mines and of the machinery and the appliances used for that purpose, and have had at least three years' experience in mines which liberate explosive gases. In the performance of his duties as a fire boss employed in a gaseous mine, he is required to prepare a danger signal with a red color at the mine entrance which prevents all persons except the mine owner, the operator, or his agent, in cases of necessity, from passing beyond the signal until the mine has been examined by the fire boss and by him reported to be safe. He is also required to go into all the working places of the mine, where gas is known to exist or is likely to exist, and to examine it carefully with a safety lamp and to do or cause to be done whatever may be necessary to remove from the working places all dangerous or noxious gases and to make such places safe for persons to enter as workmen. The examination and the removal of the gases shall be made by the fire boss within three hours before the time each shift begins to work in the mine. The fire boss is required at each examination to indicate his presence by a plain mark at the face of every place examined; and when the mine is safe he shall remove the danger signal at the mine entrance or change its color to indicate safety in order that the employees may enter the mine and begin their work. He is also required, upon completion of his examination of the mine before each shift, to make a written record of its condition in a book which is subject to inspection by the proper representatives of the State Department of Mines. In the performance of his duties the fire boss has no superior officers and all the employees working inside the mine are subordinate to the fire boss in his particular work.
By various sections relating to a mine foreman the operator of every coal mine where five or more persons are employed in a period of twenty four hours, or his agent, must employ a competent and practical inside overseer called a mine foreman who shall be a citizen and a resident of this State with at least five years' experience in the working, the ventilation and the drainage of coal mines. Such mine foreman must hold a certificate of competency for his position from the State Department of Mines and must pass an examination given by the department under its rules and regulations. In mines in which the operations are so extensive that all the duties devolving upon the mine foreman can not be discharged by one man, competent persons having had at least three years' experience in coal mines may be designated *212 and appointed as assistants who shall act under the mine foreman's instruction and shall be responsible for their conduct in the discharge of their duties under such designation or employment. In the discharge of his duties the mine foreman is required to keep a careful watch over the ventilation apparatus, the airways, the travel ways, the pumps and the drainage of the mine. He must see that, as the miners advance their excavations, proper break throughs are made as required by law to ventilate the mine properly; that all loose coal, slate and rock overhead in the working places and along the haulways are removed or carefully secured to prevent danger to persons employed in the mine; and that sufficient props, caps and timbers are furnished for the places where they are to be used. He is required to drain all water from the working places and to keep them dry as far as practical while the miners are at work. He must see that cross cuts are made as required by law for proper ventilation of the mine and that the air current is properly measured. He must cause the slopes, the engine planes, and the haulage roads to be of sufficient width to enable persons to pass moving cars with safety and must provide, in the haulways where machinery is used, a proper system of signals. He must maintain proper bore holes in a mine in which there are inflammable gases and visit and examine daily each working place in the mine. He is also required to see that every mine liberating explosive gas is kept free of standing gas in all working places and roadways, and that any accumulation of explosive or noxious gases in any worked out or abandoned portion of the mine is removed. He must give prompt attention to the removal of all dangers reported to him by his assistants, the fire boss, or any other person and, after inspection, remove the danger at once. The mine foreman is also required to read and countersign daily all reports entered in the record book of the fire bosses.
It is pertinent to observe that though various sections of the statute specifically mention the fire boss, the mine foreman, and the assistant mine foreman, no reference is anywhere made to a section foreman. He is not a statutory official and his only apparent connection with the mine foreman is that he is under his supervision. In that respect the section foreman does not differ from the other employees who work inside the mine under the direction of the mine foreman.
It is conceded by counsel representing the respective parties and the amicus curiae that none of the sections of the statute which relate to the fire boss or the mine foreman or his assistants contains any express provision which prohibits a section foreman or any other person who holds a certificate of competency from performing the duties imposed by statute upon a fire boss. It is also worthy of note that the existing established practice which has prevailed for at least twenty years, by which a section foreman, holding a certificate of competency and possessing the requisite knowledge and experience, was permitted in multiple shift mines, to act as and perform the duties of a fire boss before the men on each succeeding shift after the first shift entered the mine, was never questioned until the amicus curiae in this case, sometime during the year 1948, challenged the legality of the practice. The defendant as chief of the State Department of Mines then submitted the question to the Attorney General by letter dated January 4, 1949, and on January 15, 1949, in an opinion prepared by one of his assistants, the Attorney General proceeded to interpret the plain and unambiguous provisions of the statute and reached the conclusion that the duties of a section foreman, referred to in the opinion as a section boss, and the duties of a fire boss were, by law, separate and distinct and that they should be performed by different persons. The opinion also stated that the respective duties of the fire boss and the mine foreman were entirely different and that, though the statute was silent on that point, neither could act in the capacity of the other. After receiving the foregoing opinion of the Attorney General, the defendant, on January 17, 1949, issued the directive, which gave rise to this litigation, *213 that no mine foreman, section foreman or assistant foreman, acting as such, could legally "fire boss" a mine.
With respect to the several sections of Article 2, Chapter 22, Code, 1931, as amended, referred to in the opinion of the majority and in this dissent, the majority opinion contains these statements: "Article 2, Chapter 22, relates, in its entirety, to the operation of coal mines. Therefore, the several sections thereof must be considered in pari materia." and "From these facts we necessarily conclude that there is no ambiguity in the statutes under consideration." Despite the last quoted statement, however, and even though it declares that there is no ambiguity "in the statutes under consideration", the majority proceeded to interpret the various sections of the statute and, by reading into them something that all the parties concede is not contained in any of them, reached the conclusion that "Code, 22-2, as amended, in the circumstances therein set out, requires that an operator of a coal mine employ a qualified person to serve as fire boss of the mine and a different person to serve as mine foreman therein, and forbids a mine foreman, assistant mine foreman or section foreman to serve also as fire boss on the same day or shift in the same mine or section." In my judgment, after the majority had concluded that there is no ambiguity in the various sections of the statutes under consideration, it should have refused to interpret or construe any of the several sections but instead, under many decisions of this Court, should have given effect to their plain and unambiguous provisions. When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts. State v. Epperly, W.Va., 65 S.E.2d 488; Hereford v. Meek, W.Va., 52 S.E.2d 740; State ex rel. Department of Unemployment Compensation v. Continental Casualty Company, 130 W.Va. 147, 42 S.E.2d 820; State ex rel. McLaughlin v. Morris, 128 W.Va. 456, 37 S.E.2d 85; State v. Patachas, 96 W.Va. 203, 122 S.E. 545; Kelley & Moyers v. Bowman, 68 W.Va. 49, 69 S.E. 456; 50 Am.Jur., Statutes, Section 225. If a statute is free from ambiguity the duty of the courts is not to construe but to
apply the statute, and in so doing, its words should be given their ordinary acceptation and significance and the meaning commonly attributed to them. 50 Am.Jur., Statutes, Section 238; State v. Epperly, W.Va., 65 S.E.2d 488. The rule of statutory construction that statutes which relate to the same subject should be read and construed together is not applicable to statutory provisions that are clear and unambiguous. State v. Epperly, W.Va., 65 S.E.2d 488; 50 Am.Jur., Statutes, Section 348; 59 C.J., Statutes, Paragraph 620(2)(a), page 1050, and Paragraph 619d(1), page 1041.
I agree with the statement of the majority that the sections of the statute under consideration are free from ambiguity. In consequence, I can not accept or recognize as correct the inconsistent action of the majority in subjecting the provisions of the statute to judicial interpretation or, in construing the statute, to interpolate in it something which the Legislature has omitted from it. It is crystal clear to me that the Legislature, in omitting from the statute any provision which forbids a section foreman who holds a certificate of competency and who is qualified by knowledge and experience to perform the duties of a fire boss, did not intend to prohibit any such section foreman from acting in the capacity of a fire boss. If the Legislature had so intended it would have expressed that intent by apt and appropriate language. That it did not do so indicates clearly that it intended to permit such section foreman to act as a fire boss and that, with knowledge of its existence, it recognized the established practice, which enabled a section foreman so to act, as valid and proper.
If, however, the sections of the statute under consideration should properly be regarded as ambiguous and subject to judicial interpretation, the construction placed upon them by the majority is wholly unjustified and clearly erroneous. If the statute is to be interpreted some consideration should be given to the rule of contemporaneous construction and to the rule which requires that, when a statute is susceptible of two permissible constructions, *214 one of which leads to manifest hardship and the other to equity and fairness, the equitable and fair construction should be adopted. Numerous decisions of this Court recognize and sustain each of the foregoing rules of statutory construction; but in arriving at its conclusion the majority disregards and ignores both of those rules.
"A contemporary exposition of a statute, uncertain in its meaning, recognized and acquiesced in, for a long period of time, by the officers charged with the duty of enforcing it, the courts, the Legislature and the people, will be adopted unless it is manifestly wrong." Point 4, Syllabus, State v. Davis, 62 W.Va. 500, 60 S.E. 584, 14 L.R.A.,N.S., 1142. For various statements of the rule of contemporary construction of an ambiguous statute and its application or recognition by this Court in prior decisions see State ex rel. Ballard v. Vest, W.Va., 65 S.E.2d 649; Wilson v. Hix, W.Va., 65 S.E.2d 717; Elite Laundry Company v. Dunn, 126 W.Va. 858, 30 S.E.2d 454; State ex rel. Brandon v. Board of Control, 84 W.Va. 417, 100 S.E. 215; State v. Harden, 62 W.Va. 313, 58 S.E. 715, 60 S.E. 394; Mann v. Mercer County Court, 58 W.Va. 651, 52 S.E. 776; Daniel v. Simms, 49 W.Va. 554, 39 S.E. 690. It is obvious that the Legislature, which is presumed to be cognizant of the long established practice which permitted a qualified section foreman holding a certificate of competency to act in the capacity of a fire boss, which practice was recognized and approved by the State Department of Mines which is charged with the enforcement of the mining statute, adopted and recognized a construction of the statute which authorized such practice. In construing an ambiguous statute consideration and weight should be given by the court to the construction placed upon the statute by the Legislature. State ex rel. Department of Unemployment Compensation v. Continental Casualty Company, 130 W.Va. 147, 42 S.E.2d 820; Beatty v. Union Trust and Deposit Company, 123 W.Va. 144, 13 S.E.2d 760; 59 C.J. p. 1033. In Smith v. Bryan, 100 Va. 199, 40 S.E. 652, 654, the Supreme Court of Appeals of Virginia used this language: "So, also, the practical construction given to a statute by public
officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. * * * The Legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction.
"Contemporaneous construction, and official usage for a long period by persons charged with the administration of the law, have always been regarded as legitimate aids in the construction of statutes. Sutherland on Stat. Con., sec. 309." See also Miller v. Commonwealth, 180 Va. 36, 21 S.E.2d 721; Hunton v. Commonwealth, 166 Va. 229, 183 S.E. 873; Commonwealth v. Stringfellow, 173 Va. 284, 4 S.E.2d 357; Commonwealth v. Dodson, 176 Va. 281, 11 S.E.2d 120. Despite the force of the foregoing judicial pronouncements the majority has given no consideration or weight to the manifest attitude of the Legislature with respect to the meaning and the effect of the various provisions of the sections of the statute which relate to a fire boss and to a mine foreman. By its recognition of the practice, which until the present decision has permitted a qualified section foreman holding a certificate of competency to act in the capacity of a fire boss in mines in which multiple shifts were used in their operation, the Legislature has placed a construction upon the statute which authorized such practice.
If there are two permissible constructions of the statute one of which works manifest injustice and the other of which results in equity and fairness, the equitable and fair construction of the statute should be adopted. With respect to that rule this. Court, in Point 2 of the syllabus in Hasson v. City of Chester, 67 W.Va. 278, 67 S.E. 731, uses this language: "Of two permissible constructions of a statute, one working manifest injustice and the other equity and fairness, the latter is to be adopted, upon the presumption that the legislature did not intend the results flowing from the former." It is obvious that the construction now placed upon those sections of the statute is unjust and unfair in that it imposes a substantial burden *215 upon the coal mining industry and the coal consuming public in this State at the expense of benefiting only a number of additional and unnecessary employees.
In my opinion the confusion which obviously exists in the present decision is due in large measure to the effort to extend unduly the effect of section 45 which provides that in the performance of the duties devolving upon the fire bosses they shall have no superior officers but that all employees working inside the mine shall be subordinate to them in their particular work. In order, however, to give this statutory provision full force and effect it is not necessary to distort the meaning of the statute by resorting to a false or an unwarranted construction. Under that section of the statute, a section foreman, when acting in the capacity of a fire boss is, within the meaning of the statute, a fire boss, and, while acting as such, he has no superior officer in the performance of the duties in which he is then engaged and all the employees working inside the mine are subordinate to him not as a section foreman but as a fire boss.
The theory upon which the majority bases its decision, that the positions of fire boss and section foreman, erroneously treated as a mine foreman, are incompatible, is closely related to the argument, advanced in support of the ruling of the Attorney General, that if a section foreman, who works under the direction of the mine foreman, or a mine foreman, is permitted to act as a fire boss the safety of the mine would be lessened because a section foreman or a mine foreman is primarily interested in the production of the mine. This argument is wholly unsound. It is based on the false assumption that the only important objective of the mine foreman is the furtherance of production and it ignores the various statutory provisions which impose upon him numerous duties involving the safety of the mine. He is just as much concerned with the subject of safety in the discharge of his statutory duties as is the fire boss in the performance of the duties with which he is charged. Section 6 expressly requires the mine foreman, in case of accident to a ventilating fan or its machinery which seriously interrupts the ventilation of the mine, to order the men to withdraw immediately from the mine and not allow them to return to their work until the ventilation has been restored and the mine has been thoroughly examined by him, an assistant mine foreman, or a fire boss and reported to be safe. It is unreasonable to assume that a person employed as a mine foreman would disregard his plain duty, or that either he or a section foreman in an operating coal mine would become so eager to increase the production of the mine that he would neglect or ignore the safety of the place in which he works or that by acting as a fire boss he would risk his employment and endanger his own life in order to increase the production of his employer at the expense of the safety of the mine in which he is required to be regardless of the character of the work in which he may be engaged, or that a section foreman, while acting as a fire boss, would be less concerned about the safety of the mine, the workmen, and himself than a regularly employed fire boss. The State Department of Mines issues the same type of certificate to a mine foreman and a fire boss. A mine foreman must have had five years' experience and a fire boss three years' experience in mines in which each is permitted to serve in his official capacity; and a competent section foreman who holds a certificate which authorizes him to perform the duties of a mine foreman or of a fire boss is as well qualified to discharge the duties of either position as a regularly employed mine foreman or a regularly employed fire boss. If the question of safety of the mine and the men who work in it were involved, I should be disposed to go a long way to adopt a construction which would promote or secure safety in the coal mining industry. The occupation of coal mining is fraught with hazard and the man who works in a coal mine is in constant danger. He deserves and should be given the utmost protection that can possibly be provided. But the issue here is not one of safety for no one contends that the practice of permitting a qualified section foreman, who holds a certificate of competency, *216 to act as a fire boss in mines in which multiple shifts are employed renders the mine less safe than if the duties of a fire boss were performed by a regularly employed fire boss. In fact, it seems clear that the examination of the mine or a section of it by a competent and experienced section foreman, acting as a fire boss, who has worked in the area which he examines immediately before his shift ends and before the next shift begins instead of by a fire boss who enters the mine when he begins his examination, tends to promote rather than to jeopardize the safety of the mine and of those who work in it. At any rate, if a mine foreman, a section foreman, or any other person, in his zeal to increase production, becomes indifferent to or careless of the safety of the mine or his own life and the lives of other employees, the remedy, in a situation of that nature, is not tortured statutory construction but prompt and effective termination of his employment regardless of the position or the capacity in which he acts.
The majority cites and stresses the decisions of this Court in the cases of Williams v. Thacker Coal and Coke Company, 44 W.Va. 599, 30 S.E. 107, 40 L.R.A. 812; Crockett v. Keystone Coal and Coke Company, 75 W.Va. 476, 84 S.E. 948; Bralley v. Tidewater Coal and Coke Company, 66 W.Va. 278, 66 S.E. 684, 40 L.R.A.,N.S., 945, 19 Ann.Cas. 510; Squilache v. Tidewater Coal & Coke Co., 64 W.Va. 337, 62 S.E. 446; McMillan v. Middle States Coal and Coke Company, 61 W.Va. 531, 57 S.E. 129, 11 L.R.A.,N.S., 840; Gartin v. Draper Coal and Coke Company, 72 W.Va. 405. 78 S.E. 673; Strother v. United States Coal and Coke Company, 81 W.V 657, 95 S.E. 806; State ex rel. Money Service Company v. Stuart, 112 W.Va. 370, 164 S.E. 409; Graham v. Newburg Orrel Coal and Coke Company, 38 W.Va. 273, 18 S.E. 584; Haptonstall v. Boomer Coal and Coke Company, 78 W.Va. 412, 89 S.E. 723; Cheeks v. Virginia-Pocahontas Coal Company, 74 W.Va. 553, 82 S.E. 756; Sprinkle v. Big Sandy Coal and Coke Company, 72 W.Va. 358, 78 S.E. 971; Peterson v. Paint Creek Collieries Company, 71 W.Va. 334, 76 S.E. 664, to sustain its view that the positions of mine foreman and fire boss, being separate and distinct, are incompatible and, erroneously considering a section foreman as a mine foreman or assistant mine foreman, concludes that the statute forbids a section foreman, which it does not even mention, to act as or to perform the duties of a regularly employed fire boss. Even if it be conceded that a mine foreman and a fire boss are separate and distinct positions and that one person can not regularly or permanently hold both positions at the same time, it does not follow that a duly qualified section foreman, who is not a mine foreman, may not act as a fire boss; and any incompatibility that may exist between the duties of a mine foreman and the duties of a fire boss forms no basis or support for the conclusion reached by the majority that a qualified section foreman may not act as a fire boss. The questions raised and determined in the cases just cited were different from the issue presented in the case at bar. In consequence, those decisions have no present application, shed little if any light upon the problems involved in this case, and require no extended comment or discussion. The Haptonstall case and the Gartin case indicate that the positions of mine foreman and mine superintendent, who represents the operator, are incompatible in certain respects; but that question has no bearing upon the point at issue in this suit. Neither of those cases, nor any of the other cited cases referred to in the majority opinion, holds or intimates that a section foreman who is the holder of a certificate of competency can not act as a fire boss; and nothing appears in any of the cited cases which supports or justifies any such conclusion.
The majority opinion contains these statements: "Section 53 requires that in the event `the mine foreman or his assistants * * * find a place to be in a dangerous condition, they shall not leave the place until it is made safe, * * *.' How can a mine foreman perform such duties and at the same time fire boss a mine? Section 57 requires that a mine foreman shall each day `read carefully and countersign with ink' reports of the fire boss. Would the Legislature have required a mine foreman to read and `countersign' *217 his own report?" Of course these questions are entirely immaterial to the issue whether a section foreman, who is not a mine foreman, may act as a fire boss, and an answer to any of them is wholly unnecessary in the proper decision of this case. As to the inquiry whether the Legislature would require a mine foreman to read and countersign his own report the answer is that this action of the mine foreman does not constitute an approval of such reports but is merely an acknowledgment that he has knowledge of their contents. By admitting such knowledge the mine foreman does not in any manner whatsoever countersign his own report whether it is made by a regularly employed fire boss or by a section foreman who acts in that capacity. The act of the mine foreman in reading and countersigning the reports made by a fire boss, whether he is regularly employed, or whether he is a section foreman who by virtue of his certificate is qualified to act in that capacity, has nothing to do with the authority or the lack of authority of a qualified section foreman, under the statute, to perform the duties of a fire boss, is of no importance, and has little if any bearing upon the determination of that question.
The reasoning upon which the decision of the majority rests is that the positions of mine foreman and fire boss are incompatible and that one person can not hold both those positions at the same time. In dealing with that subject, however, the majority loses sight of the only issue in this case which, as already pointed out, is whether a qualified section foreman who holds a certificate of competency, may act as a fire boss and examine the mine before the beginning of the next succeeding working shift. The issue of incompatibility between the positions of mine foreman and fire boss is not raised by any party by any pleading and of course does not arise in this case. No one contends that any person connected with the plaintiffs can or wants to perform the duties of a mine foreman and of a fire boss at the same time and no such question is presented for decision. Yet the majority, having raised that question on its own initiative, decides it by holding that the statute, though silent, forbids a mine foreman, assistant mine foreman or section foreman to serve as a fire boss on the same day or shift in the same mine or section, and in so doing erroneously converts a section foreman, whom the statute does not even mention, into a mine foreman. Though the statute does not refer to or classify a section foreman, he suddenly becomes a mine foreman by judicial fiat when in fact he is neither a mine foreman nor a fire boss but an inside employee who, like other inside employees, works under the direction and the supervision of the mine foreman. If a section foreman, a mere inside employee, is to become a mine foreman, a statutory official, the transformation should, in my judgment, be the result of legislative rather than judicial action.
It should be noted that after the decision in this case but before this dissent was written the 1951 Legislature, at its regular session, amended Article 2, Chapter 22, Code, 1931, as amended, by enacting Chapter 127, Article 2, Section 46a, which authorizes any person who holds a certificate of competency from the State Department of Mines to perform the duties of a fire boss, but, of course, this dissent relates to and is based upon the statute as it existed before the 1951 amendment.
For the reasons stated, I would affirm the judgment of the circuit court.
FOX, J., concurs in the views set forth in this dissent.